848 P.2d 1

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Timothy Lee WERNER, Defendant–Appellee.**

**No. 13431.**

Court of Appeals of New Mexico.

Sept. 3, 1992.

Certiorari Granted Oct. 30, 1992.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jay L. Faurot, P.A., William C. Birdsall, William C. Birdsall, P.C., Farmington, for defendant-appellee.

## OPINION

PICKARD, Judge.

The state appeals the grant of a suppression motion. The motion was granted on the basis of the trial court's finding that the detention to which defendant was subjected was a *de facto* arrest without probable cause. We disagree and hold that defendant was the subject of an investigatory detention for which there was ample reasonable suspicion.

■ We note at the outset that probable cause is not an issue in this appeal. The state stipulated below that probable cause was absent, and it does not contend on appeal that there was probable cause for an arrest. As observed in *State v. Lopez*, 99 N.M. 385, 387, 658 P.2d 460, 462 (Ct.App.), *cert. denied*, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 113 (1983), the state, as any other party, is subject to the rule that it must make its contentions known in the trial court. Thus, although the existence of probable cause is a question of law for the trial court to decide when there are no factual issues to resolve and is therefore freely reviewable on appeal, *see State v. Goss*, 111 N.M. 530, 807 P.2d 228 (Ct.App. 1991), we should not address an issue the state conceded in the trial court. We should also not address an issue not briefed. The exceptions to the general rule of addressing only those issues raised by the parties, both below and on appeal,

should be applied sparingly and "only where there could be no valid reason for the lower court's action." *New Mexico Dep't of Human Servs., Income Support Div. v. Tapia*, 97 N.M. 632, 634, 642 P.2d 1091, 1093 (1982). Those exceptions do not apply here.

The parties stipulated to the following facts at the hearing on the motion to suppress. On February 16, 1991, at approximately 2:00 p.m., Gennie Garcia, an employee of a store called Gene's Rent to Own in Farmington, discovered that a Fisher 8mm camcorder was missing from the store. She called the police, and Officer Ron McNeal arrived at approximately 2:46 p.m. Garcia noticed that the battery pack for the missing camcorder was still in the shipping box. Knowing that the battery pack was necessary for operation of the camcorder, Garcia contacted area stores to discover whether anyone was attempting to purchase camcorder accessories. Brian Barrowclaugh, manager of a store called Paradise Village, told Garcia that two men had been in his store to purchase accessories for a Fisher camcorder at approximately 1:45 that day, and he gave her a description of the two men. Garcia remembered two men of that general description having been in her store.

Upon receiving this information, Garcia again contacted the police. Responding to her information, McNeal went to Paradise Village at approximately 3:26 p.m. Employees there gave him a description of the two men. One employee was able to identify one of the men as defendant, Tim Werner, based on his previous visits to the store. Employees told McNeal that the two men had come into the store, carrying a Fisher camcorder in a brown knapsack. Defendant's companion, Roger Smith, had told employees that the camcorder belonged to his mother and that the battery pack had been lost. Paradise Village was not able to provide the necessary battery pack. The two left the store in a blue Camaro.

McNeal, who was personally familiar with defendant, obtained the location of his residence and went there at approximately

4:25 p.m. No one was there, but as he left, he saw defendant driving down the street in a blue Camaro. McNeal turned around and stopped the Camaro after it pulled into a trailer park. Defendant exited the Camaro as McNeal radioed for back up. McNeal approached defendant and took a folding knife from him. He then looked into the Camaro at Smith. At that time, he noticed a brown knapsack on the back seat, partially covered by a Levi jacket.

At approximately 4:45 p.m., McNeal told defendant and Smith that they were being detained and they were not free to leave. He then placed them in the rear seat of his locked squad car. At this point, the officers asked for permission to search the car. Defendant refused to give his consent to the search because the car was owned by someone else.

McNeal then requested that the Paradise Village employees come to the scene to identify defendant and Smith. They arrived at approximately 5:00 p.m. Defendant and Smith were removed from the squad car and were positively identified as the two men who had come to the store requesting a battery pack for a Fisher camcorder. Defendant and Smith were then returned to the squad car. Then Garcia was brought to the scene. She positively identified Smith, but could only say that defendant was possibly the other man.

McNeal then called the district attorney's office. He was concerned about whether he needed a search warrant to search the Camaro. He received advice to arrest defendant and Smith and perform an inventory search of the vehicle according to police procedures. McNeal then told defendant and Smith that they were under arrest for felony shoplifting. They were handcuffed and returned to the squad car. The officers then opened the Camaro, found the brown knapsack on the back seat, unzipped it, and found the stolen camcorder inside.

■ Based on these facts, the trial court found that the initial stop was a lawful investigatory stop. The trial court then found that the initial stop became a *de facto* arrest when defendant was informed that he was being detained and was placed in a locked police unit. The standard of review for rulings on suppression motions is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party. *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct. App.1983). This court is not bound, however, by a trial court's ruling when it is predicated upon a mistake of law. *Id.* We believe that such is the case here.

■ The distinction between a stop and an arrest is one of degree, so there is no bright line test for determining when a stop becomes an arrest. *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Some of the factors to consider include the law enforcement purposes served by the detention, the diligence of the police in pursuing the investigation, the intrusiveness of the detention, and its duration. *Id.* at 685–86, 105 S.Ct. at 1575. The cases recognize that the length of the detention may be extended and the scope of the investigation enlarged when information obtained after the initial stop arouses further suspicion. *See, e.g., People v. Lidgren,* 739 P.2d 895 (Colo.Ct.App.1987); *State v. Watson,* 165 Conn. 577, 345 A.2d 532 (1973). The ultimate test is one of reasonableness of the detention under the circumstances. *See State v. Cohen,* 103 N.M. 558, 711 P.2d 3 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). The court must determine whether the detention was reasonable by balancing the competing interests of the individual and the government. *State v. Lovato,* 112 N.M. 517, 817 P.2d 251 (Ct. App.1991).

■ In some instances, the question of whether a person is arrested might be a factual question on which there is disputed evidence. In these instances, the question would be one of fact for the trial court, subject to the substantial evidence test on review. *See Boone v. State,* 105 N.M. 223, 731 P.2d 366 (1986). In other instances, the question of whether a person is arrested appears to involve more of a balancing of factors based on undisputed facts. *Lovato* and *Sharpe* appear to be in this latter category in that they measure whether the

actions of the police are reasonable by balancing the circumstances prompting the police into action against the defendants' privacy rights.

In *Lovato*, the question was whether it was reasonable in the context of a stop for a drive-by shooting to make the occupants get out of a car with their fingers laced behind their heads, make them walk backwards toward the police, and handcuff them while the police had guns drawn. Although this seemed like an arrest, we held that it was permissible activity for the officers' safety in connection with an investigatory stop for a violent offense.

Similarly, in *Sharpe*, the Court said that in determining whether a stop turned into a *de facto* arrest, it needed to consider the purposes to be served by the stop together with the amount of time reasonably needed to effectuate those purposes. *Sharpe* holds that if the police are diligently proceeding with a means of investigation designed to confirm or dispel their suspicions, then there is no arrest. Moreover, the *Sharpe* Court cautioned against second-guessing the police.

Determining questions of reasonableness and balancing factors in the context of police conduct are generally issues of law for the trial court, where conclusions are freely reversible on appeal. *Cf. State v. Sheetz*, 113 N.M. 324, 825 P.2d 614 (Ct.App. 1991) (determination of proper standards of police investigation in an entrapment case is a question of law and policy to be decided by court). Therefore, we review this issue without using the deferential substantial evidence standard of review.

■ First, we must consider whether there were legitimate law enforcement purposes served by placing defendant in the squad car. Several of those interests include preventing flight if incriminating evidence is found, protecting officers from harm, and allowing orderly completion of the investigation. *See Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Here, police had already removed a knife from defendant's person. They had also observed a brown knapsack similar to that reportedly containing the stolen camcorder. It was reasonable for the police to remove defendant from his vehicle so that he could not flee or destroy the evidence. While the back of a squad car may not be the ideal location for the purposes of detention, *see United States v. Manbeck*, 744 F.2d 360, 377 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985), it was reasonable for the officers not to allow defendant back into his car. Furthermore, by placing him in the squad car, the officers were preventing defendant from fleeing on foot.

■ Both parties appear to agree that defendant is not subjected to a *per se* arrest simply by his placement in the back seat of a squad car. *United States v. Lego*, 855 F.2d 542 (8th Cir.1988); *Manbeck*, 744 F.2d at 377; *United States v. Moore*, 638 F.2d 1171 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). The concern here is with the duration of the detention in combination with its location. No court has set a limit on the duration of an investigatory detention, except to say that it must last no longer than necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In fact, the United States Supreme Court has said that while the brevity of the investigatory detention is an important factor, the courts must consider the purposes of the stop and the time needed to effectuate those purposes. *Sharpe*, 470 U.S. at 685–86, 105 S.Ct. at 1575. The key is whether the police are diligently engaging in investigation that will confirm or dispel the suspicions leading to the stop. *Id.*

Here, the police sought consent to search the vehicle in order to confirm that defendant and Smith had the stolen camcorder. In light of the fact that the suspicions of the police were greatly aroused once they saw the brown knapsack in the car, the police chose to pursue another method of investigation when consent was denied. They had the witnesses who saw the two men in the stores brought to identify them. Such show-ups are valid investigatory procedures and have been held to be a valid

reason for detaining suspects. *People v. Bowen*, 195 Cal.App.3d 269, 240 Cal.Rptr. 466 (1987); *State v. Mitchell*, 204 Conn. 187, 527 A.2d 1168, *cert. denied*, 484 U.S. 927, 108 S.Ct. 293, 98 L.Ed.2d 252 (1987); *State v. Merklein*, 388 So.2d 218 (Fla.Dist. Ct.App.1980); *People v. Hicks*, 68 N.Y.2d 234, 508 N.Y.S.2d 163, 500 N.E.2d 861 (1986); *State v. Wilkens*, 159 Wis.2d 618, 465 N.W.2d 206 (Ct.App.1990); *see Summers*, 452 U.S. at 701–02 n. 14, 101 S.Ct. at 2594 n. 14; *State v. Moffatt*, 450 N.W.2d 116 (Minn.1990). The detentions in these cases ranged from thirty minutes to more than an hour and were upheld as valid investigatory stops because the police were diligent in pursuing investigation.

The evidence here showed that the police were diligent in pursuing their investigation with regard to defendant. As soon as consent to search was denied, the witnesses were brought to identify defendant. There are no facts indicating any unnecessary delay. There are no facts suggesting that the police attempted to intimidate defendant and Smith into giving up rights defendant and Smith asserted. Simply because the police might have investigated in a different way, arguably taking less time, does not mean they acted unreasonably. *See id.* at 119. We believe that the officers in this case acted reasonably under the circumstances in holding defendant in their squad car until witnesses could identify him, thereby confirming their suspicions that defendant shoplifted the camcorder.

Accordingly, the trial court erred in finding that defendant was arrested when he was detained and placed in the squad car and therefore erred in suppressing the evidence on this ground. Defendant nonetheless contends that the order should be affirmed because (1) the state did not preserve a claim that the show-up identification was tainted by the arrest, and (2) the trial court was right for the wrong reason because the show-up was unnecessarily suggestive. We disagree. The whole point of the suppression hearing was to suppress evidence tainted by an allegedly unlawful arrest. Nor was the show-up unnecessarily suggestive under the facts of this case, especially inasmuch as one of the store employees knew defendant by name from previous visits to the store. *See State v. Torres*, 88 N.M. 574, 544 P.2d 289 (Ct.App.1975).

The order of suppression is reversed and the case remanded to the trial court for further proceedings.

IT IS SO ORDERED.

DONNELLY and FLORES, JJ., concur.