871 P.2d 971

**STATE of New Mexico, Plaintiff–Respondent,**

**v.**

**Timothy Lee WERNER, Defendant–Petitioner.**

**No. 20819.**

Supreme Court of New Mexico.

March 8, 1994.

Rehearing Denied March 28, 1994.

Jay Faurot, P.A., William C. Birdsall, P.C., Farmington, for defendant-petitioner.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-respondent.

**OPINION**

FRANCHINI, Justice.

We granted certiorari to consider whether petitioner Werner's detention was a de facto illegal arrest without probable cause or a reasonable investigatory detention. The trial court granted Werner's motion to suppress evidence obtained during Werner's detention, finding that the detention was a de facto arrest, and the Court of Appeals reversed.

We now reverse the Court of Appeals and affirm the order of the trial court.

As noted by the Court of Appeals, probable cause is not an issue in this appeal since the State stipulated below that probable cause was absent. Furthermore, the State does not contend on appeal that there was probable cause for an arrest.

## I.

A statement of the stipulated facts is contained in the Court of Appeals opinion. *State v. Werner*, 115 N.M. 131, 132, 848 P.2d 1, 2 (Ct.App.1992). We briefly summarize the pertinent facts. Garcia, an employee of Gene's Rent to Own, discovered that a camcorder was missing from his store and called the police. Because the camcorder's battery pack was still in the shipping box, Garcia contacted area stores to see if anyone was attempting to purchase a battery pack. Barrowclough, manager of Paradise Village, told Garcia that two men attempted to purchase camcorder accessories at approximately 1:45 p.m. and described the men to her. Garcia relayed this information to the police. Officer McNeal went to Paradise Village where he was told that the men were carrying the camcorder in a brown knapsack and had left the store in a blue Camaro. One employee identified one of the two men as Werner, based on Werner's visits to the store.

Officer McNeal, who was personally familiar with Werner, went to Werner's residence at approximately 4:25 or 4:30 p.m., but nobody was there. As he was leaving, McNeal saw Werner driving down the street and pulled him over. Werner exited the Camaro, and after he radioed for back up, McNeal approached Werner and took a folding knife from him. McNeal looked into the Camaro and saw a brown knapsack partially covered by a Levi jacket. At 4:45 p.m., McNeal locked Werner and his companion, Smith, in the back seat of his squad car. McNeal told Werner and Smith that they were being detained and were not free to leave. McNeal asked for permission to search the Camaro. Werner refused to give his consent to the search, stating that the car was owned by someone else.

At approximately 5:00 p.m., Paradise Village employees viewed Werner and Smith at the scene of the stop. They identified them as the men who came to the store looking for a battery pack. At approximately 5:30 p.m., Garcia viewed Werner and Smith. Garcia identified Smith as the man who had been in her store. Garcia was unsure about Werner.

McNeal called the district attorney's office and was told to arrest Werner and Smith and to perform an inventory search of the vehicle. McNeal then told Werner and Smith they were under arrest for felony shoplifting. McNeal searched the Camaro and found the camcorder in the brown knapsack. At approximately 6:10 p.m., Werner and Smith were transported to jail.

The trial court found that the initial lawful investigatory stop of Werner became a de facto arrest at the moment Werner was informed he was detained and was placed in a locked police car. Because the State conceded that there was not probable cause for an arrest at that point, the trial court suppressed the evidence seized thereafter.

## II.

We address the following issues: (1) What is the standard of appellate review for rulings on suppression of evidence motions based upon Fourth Amendment violations, and (2) whether Werner's detention was a de facto arrest or a reasonable investigatory stop.

■ The Court of Appeals did not apply the deferential substantial evidence test to the trial court's conclusion that Werner was subjected to a de facto arrest. *Werner*, 115 N.M. at 134, 848 P.2d at 4. The Court noted that the conclusion of a de facto arrest required determining questions of reasonableness and balancing factors based on undisputed facts. *Id.* The Court therefore concluded that this issue was an issue of law, not subject to the substantial evidence standard. We agree.

In *State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.), *rev'd on other grounds*, 100 N.M. 470, 672 P.2d 643 (1983) the Court of Appeals stated:

The appropriate standard for review on appeal [of a motion to suppress evidence] is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party; all reasonable inferences in support of the court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded. Resolution of factual conflicts, credibility and weight of evidence is particularly a matter within the province of the trier of fact. A reviewing court is not, however, bound by a trial court's ruling when predicated upon a mistake of law. (Citations omitted.) Here, the Court of Appeals correctly distinguished between factual issues, subject to the substantial evidence standard of review, and legal issues, subject to plenary review on appeal. As the Court of Appeals noted, a determination of whether the officer in this case made an illegal de facto arrest, or simply conducted a permissible detention, ultimately depends on whether his actions were reasonable under Fourth Amendment standards. *See State v. Cohen,* 103 N.M. 558, 561, 711 P.2d 3, 6 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986); *see also United States v. Corral,* 970 F.2d 719, 723 (10th Cir.1992) (questions of law, including reasonableness in Fourth Amendment issues, are reviewed de novo). That reflects the fact that reasonableness in this context requires the balancing of legitimate law enforcement interests against a defendant's privacy rights, a policy decision which the trial court is in no better position to make than an appellate court, *see Miller v. Fenton,* 474 U.S. 104, 115–17, 106 S.Ct. 445, 452–53, 88 L.Ed.2d 405 (1985) (stating that voluntariness of a confession is a question of law requiring the consideration of complex values that the trial judge is not in an appreciably better position than a reviewing court to make).

### III.

■ Although we agree with the Court of Appeals on the standard of review, we disagree with its holding that there was no de facto arrest. "[S]topping an automobile and detaining its occupants constitute a 'seizure'" under the Fourth and Fourteenth Amendments. *Delaware v. Prouse,* 440 U.S. 648,

653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *see generally Cohen,* 103 N.M. at 561, 711 P.2d at 6. The Constitution only proscribes, however, those searches and seizures which are unreasonable. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, "police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that particular person is engaged in criminal activity." *United States v. Williams,* 962 F.2d 1218, 1223 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992).

Neither party questions the trial court's finding that the initial stop of Werner's automobile was a lawful investigatory stop. At issue is whether the lengthy detention of Werner in the patrol car ripened into a de facto arrest.

■ An officer who makes a valid investigatory stop may briefly detain those he suspects of criminal activity to verify or quell that suspicion. *United States v. Winfrey,* 915 F.2d 212, 216 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). The scope of activities during an investigatory detention must be reasonably related to the circumstances that initially justified the stop. *Sharpe,* 470 U.S. at 682, 105 S.Ct. at 1573 (quoting *Terry v. Ohio,* 392 U.S. at 20, 88 S.Ct. at 1879). In reviewing the facts and circumstances here, we must keep in mind "the narrow scope of the *Terry* exception—an exception based on a brief, street encounter between police and a suspect." To do otherwise would be to risk allowing the ' "exception" ... to swallow the general rule that Fourth Amendment seizures are "reasonable" only if based on probable cause.' " *United States v. Ricardo D.,* 912 F.2d 337, 340 (9th Cir.1990) (quoting *Dunaway v. New York,* 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979)). A bright line test does not exist to evaluate whether an investigatory seizure is invasive enough to constitute an arrest requiring probable cause. Instead, we are guided by

"common sense and ordinary human experience." *Sharpe,* 470 U.S. at 685, 105 S.Ct. at 1575.

Although the back of a patrol car "is not an ideal location for the purposes of an investigatory detention," *United States v. Manbeck,* 744 F.2d 360, 377 (4th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985), detention in a patrol car does not constitute an arrest per se. *See, e.g. United States v. Parr,* 843 F.2d 1228, 1231 (9th Cir.1988). The federal cases permitting detaining a suspect in a police vehicle during an investigatory stop without finding a de facto arrest almost always involve shorter time periods than in this case. *See United States v. Lego,* 855 F.2d 542, 545 (8th Cir. 1988) (a brief period of time); *Manbeck,* 744 F.2d at 376–80 (4th Cir.1984) (fifteen minutes), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985).

In contrast, another line of federal cases holds that detaining a defendant in a locked police car can constitute an arrest. *See, e.g. State v. Richardson,* 949 F.2d 851, 856–58 (6th Cir.1991) (about a twenty minute detention in police car); *United States v. Thompson,* 906 F.2d 1292, 1296–97 (8th Cir.) (entire encounter lasted ninety minutes), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990); *United States v. Chamberlin,* 644 F.2d 1262, 1267 (9th Cir.1980) (twenty minute detention in police car), *cert. denied,* 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). In *Richardson,* the court held that there was a custodial arrest of the defendant when he was detained in a squad car for more than twenty minutes while another suspect was questioned. In *Richardson,* as in this case, the defendant refused to consent to a search. The court applied an objective test—whether a reasonable person in the defendant's position would have felt he was under arrest or otherwise deprived of his freedom of action in any significant way. *Richardson,* 949 F.2d at 857 (citing *United States v. Knox,* 839 F.2d 285, 291 (6th Cir.1988)), *cert. denied,* 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). The Ninth Circuit has stated that "[d]ecisions in this and other circuits support the proposition that detention in a patrol car exceeds permissible *Terry* limits absent some reasonable justification or when the detention is something other than a brief procedure employed in a routine traffic stop." *Ricardo D.,* 912 F.2d at 341. Also, the Seventh Circuit has stated that "sitting in the patrol car for several minutes was merely a normal part of traffic police procedure for identifying delinquent drivers" and did not constitute a custodial arrest. *United States v. Rodriguez* 831 F.2d 162, 166 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988). Here, we are not dealing with a routine traffic stop, therefore, we look to see if a reasonable justification for the detention existed. In doing so we balance "both the character of the official intrusion [on the person's liberty] and its justification." *Michigan v. Summers,* 452 U.S. 692, 701, 101 S.Ct. 2587, 2593, 69 L.Ed.2d 340 (1981).

Under the totality of the circumstances, we conclude that the detention of Werner in the locked patrol car over forty-five minutes and probably longer prior to being arrested presented a significant intrusion. We base this conclusion on the combination of the length of time of detention, the place of detention, and the restriction on Werner's freedom of movement. Fifteen to twenty minutes after the initial stop, Werner was moved into the back seat of a locked police car where he remained, except for identifications, until his arrest, over forty-five minutes and probably longer. Werner was told by Officer McNeal that he was not free to leave and that he was not free to move the Camaro. Under the objective test applied in *Richardson,* a reasonable person in Werner's position would have felt deprived of his freedom in a significant way. *Richardson,* 949 F.2d at 857. Accordingly, we conclude that this intrusion was significant.

We are not unmindful that our balancing analysis must also assess the government's justification for the intrusion. In its opinion, the Court of Appeals states that it was reasonable to remove Werner from the vehicle so that he could not flee and destroy evidence. *Werner,* 115 N.M. at 134, 848 P.2d at 4. The Court further notes that the police removed a knife from Werner. Finally, the Court emphasizes the diligence with which

the police pursued the investigation while Werner was being detained. The Court notes that the police promptly brought witnesses to identify Defendant and did not unreasonably delay the investigation. *Id.* at 135, 848 P.2d at 5. As stated by the Michigan Supreme Court in *People v. Bloyd,* 416 Mich. 538, 331 N.W.2d 447, 455 (1982), the first two reasons, preventing flight and minimizing risk of harm to an officer, "are present in many, if not most, criminal investigations and detentions." Here, Officer McNeal was in control of the suspects. He knew who Werner was and where he lived. Although Officer McNeal took a folding knife from Werner, there was no indication in the record that McNeal feared for his safety.

This brings us to an evaluation of the necessity for further investigatory activity while Werner was detained and the diligence with which the police pursued it. Officer McNeal knew that a burglary had occurred and the identification of the item taken was known at 2:46 p.m. when he spoke with Garcia, who had discovered that a camcorder was missing at 2:00 p.m. and called the police. Between 2:45 and 3:26 p.m., Garcia consulted with the manager of Paradise Village and reported the descriptions of Werner and Smith to the police. At 3:26 McNeal went to Paradise Village and obtained a description of Werner and Smith as the two men with a camcorder in a brown knapsack who were trying to buy a battery and who left in a blue Camaro. At that time, Werner was identified by name and description. At 4:25 p.m., McNeal stopped Werner near his residence, looked into the Camaro, and saw the brown knapsack. All of these events occurred before Werner was locked in the patrol car at 4:45 p.m. and told he was being detained. At that point, 4:45 p.m., Werner was seized.

At 5:00 p.m., fifteen minutes after the detention in the police vehicle began, Werner and Smith were identified by Paradise Village employees as the two men who had a camcorder without a battery pack in a brown knapsack. The question is, what further steps were reasonably necessary to diligently investigate the incident and decide either to arrest the defendant or release him? Although the police probably had probable cause to arrest Werner at 5:00 p.m., instead they waited at least another half-hour until Garcia showed up and made a further identification, after which Werner was formally arrested. Detention in the locked patrol car for a period of over thirty minutes after the police had ample evidence to confirm their suspicions was a de facto arrest; and, since the arrest was made without an arrest warrant and the State stipulated that it lacked probable cause, it was an unreasonable seizure in violation of the Fourth Amendment.

Once again we emphasize that detention in a locked squad car does not in and of itself constitute an arrest during, for example, a radio search of a data base or completion of an investigation of facts immediately available at the scene of the detention. Diligence in the investigation is key, and the expansion of the investigation to look, search, or fish elsewhere is not contemplated for investigatory stops. The concept of diligence has an aspect of speed or haste. As soon as the investigation requires awaiting the development of circumstances off the scene, the validity of the investigatory stop becomes suspect. If authorities, acting without probable cause, can seize a person, hold him in a locked police car for over forty-five minutes while gathering witnesses, and keep him available for arrest in case probable cause is later developed, the requirement for probable cause for arrest has been turned upside down. *See Bloyd,* 331 N.W.2d at 456.

For the reasons herein set forth, we conclude that the detention of Werner was a de facto arrest. Accordingly, we reverse the Court of Appeals and affirm the trial court's order suppressing the evidence.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, J., concur.

BACA and FROST, JJ., dissenting.

FROST, Justice (dissenting).

I dissent from Part III of the majority's opinion because (1) we should not have granted certiorari to hear this appeal and (2) the Court of Appeals correctly ruled that the detention of Werner was reasonable.

**320**

The problem with granting certiorari stems from the fact that there was probable cause to arrest Werner, yet the parties stipulated to the legal conclusion that probable cause was absent. Probable cause to arrest Werner arose when Officer McNeal stopped Werner, looked into his car, and saw the brown knapsack thought to contain the stolen camcorder. At that time, Officer McNeal knew that Werner, while carrying a Fisher camcorder in a brown knapsack, had just attempted to purchase a battery pack necessary for operation of the recently-stolen Fisher camcorder, and that an employee of the store reporting the stolen item remembered having seen someone matching Werner's general description in her store. This information was sufficient to establish probable cause. *See State v. Affsprung,* 115 N.M. 546, 549, 854 P.2d 873, 876 (Ct.App.) (defining probable cause), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993). Thus, the search of Werner's automobile was proper because there was probable cause to arrest Werner.

The suppression motion should have been analyzed in terms of probable cause rather than in terms of an investigative detention pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When we assume based upon the parties' stipulation that there was no probable cause to arrest Werner, this case presents an artificial situation, and analysis of the search as an investigative detention is awkward and strained. This Court should not use a case involving a search justified by probable cause as its vehicle for delineating the scope of *Terry* investigative detentions. *See United States v. Sharpe,* 470 U.S. 675, 705–08, 105 S.Ct. 1568, 1585–87, 84 L.Ed.2d 605 (Brennan, J., dissenting). Due to the oddity of this case, it does not involve a significant question of constitutional law nor an issue of substantial public interest, and it is outside our discre-

tionary jurisdiction. NMSA 1978, § 34–5–14(B) (Repl.Pamp.1990); [1] *cf. State v. Conn,* 115 N.M. 99, 101, 847 P.2d 744, 746 (1993) (prohibiting this Court's review by writ of certiorari when no conditions of Section 34–5–14(B) are present).

Assuming arguendo that certiorari was properly granted and that probable cause was absent, I disagree with the majority's application of the law of investigative detentions to the facts of this case. The Court of Appeals correctly ruled that the challenged evidence was admissible because Werner was subjected to a reasonable investigative detention rather than a de facto arrest.

An investigative detention that is justified at its inception is reasonable under the Fourth Amendment if it is reasonably related in scope to the circumstances which justified the detention in the first place. *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1878–79. In determining the proper scope of an investigative stop and distinguishing it from a de facto arrest, the United States Supreme Court has emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. *Sharpe,* 470 U.S. at 685, 105 S.Ct. at 1574–75. Factors to consider in assessing the reasonableness of an investigative stop include the length of the detention, whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions or whether the police were dilatory or caused unnecessary delay in their investigation, and whether the police were acting in a swiftly developing situation. *Id.* at 686–88, 105 S.Ct. at 1575–77.

The circumstances of this case are a classical example of why it is necessary for law enforcement officers to be allowed to graduate their response in investigative stops

---

1. Section 34–5–14(B) states:

B. In addition to its original appellate jurisdiction, the supreme court has jurisdiction to review by writ of certiorari to the court of appeals any civil or criminal matter in which the decision of the court of appeals:

(1) is in conflict with a decision of the supreme court;

(2) is in conflict with a decision of the court of appeals;

(3) involves a significant question of law under the constitution of New Mexico or the United States; or

(4) involves an issue of substantial public interest that should be determined by the supreme court.

It was not argued that certiorari should be granted based upon § 34–5–14(B)(1) or (2).

based upon the demands of a particular situation. Here, the police had obtained a large amount of compelling information which pointed to Werner as the perpetrator of the crime. When the police stopped Werner in his car, the brown knapsack containing the stolen camcorder was laying on the back seat in plain view. This discovery certainly justified further investigatory steps after Werner refused to consent to a search of the automobile, and the further steps taken by the police were clearly reasonable. The facts indicate that the officers worked diligently in the investigation to confirm or dispel their strong suspicions by quickly bringing witnesses to identify Werner. There is absolutely no indication that the police unnecessarily prolonged Werner's detention.

The majority's opinion emphasizes that Officer McNeal knew Werner and where he lived. That knowledge, however, did not guarantee that Werner would be at his residence, locatable for further questioning, at any later time. More importantly, the majority's opinion ignores the certainty that if Werner were allowed to leave, the knapsack containing the stolen camcorder would have disappeared, thereby depriving the State of its ability to realistically prosecute this case.

The police officers had reasonable concerns regarding their safety (Werner had been carrying a knife) and Werner's ability to flee and destroy evidence. Because the police officers were acting in a swiftly developing situation, we should not indulge in unrealistic second-guessing of the police officers' actions. *Id.* at 686–87, 105 S.Ct. at 1575–76. Given the circumstances here, placing Werner in the police car was reasonable. Because the police acted reasonably in conducting their investigation, they were not required to pursue the least intrusive means of investigation available. *Id.* "A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished." *Id.*

In conclusion, the police officers acted reasonably and within the scope of a permissible investigative stop. The Court of Appeals correctly analyzed this issue, and I therefore respectfully dissent.

BACA, J., concurs.