2000 Utah Ct. App. 146

**Marilyn MURDOCK, Plaintiff and Appellant,**

v.

**MONUMENTAL LIFE INSURANCE COMPANY, a foreign corporation doing business in Utah, Defendant and Appellee.**

**No. 981718–CA.**

Court of Appeals of Utah.

May 18, 2000.

---

James K. Haslam, Provo, and G. Eric Nielson, Salt Lake City, for Appellant.

Julianne Blanch and Joy L. Clegg, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Marilyn Murdock (Plaintiff) appeals the trial court's grant of summary judgment in favor of defendant Monumental Life Insurance Company (Monumental). The trial court concluded as a matter of law that Monumental properly denied coverage because the death of the insured, Plaintiff's late husband Zachary Murdock (Murdock), was not an accident, and because the death was contributed to by commission of a felony. We affirm.

## BACKGROUND

¶ 2 In April of 1996, Richard Moser was working as the manager of a movie theater in Sandy, Utah. At about 1:00 in the morning, he and his assistant manager went to deposit the night's receipts at a local bank. As Moser walked from his van to the night drop, Murdock and another man sprang from the bushes, pointed a gun at Moser, and threatened to shoot him if he did not surrender the money.

¶ 3 When Moser did not immediately respond, the men struck him repeatedly with a stun gun, tore his clothing, gouged his chest, and knocked him to the ground where they continued to kick him and hit him with the stun gun. The assailants then took the money and turned their attack to Moser's companion.

¶ 4 Following their attack, Murdock and his accomplice fled on foot. As they fled, Moser returned to his van and gave chase. Murdock attempted to escape through a parking lot and into a field littered with construction debris, while his accomplice ran to a gray pickup truck. Moser pursued both men but, despite his efforts, the accomplice reached the pickup and escaped with the money. Moser subsequently learned that his van had struck and killed Murdock as Murdock fled through the field. Moser maintains that he did not intend to run over Murdock.

¶ 5 At the time of the robbery, Murdock was covered by an accidental death insurance policy (Policy) issued by Monumental. The

Policy contained a clause excluding "loss which is caused by, results from, or contributed to by ... committing an assault or felony." Plaintiff, the named beneficiary on the deceased's insurance, filed a claim, which Monumental denied on grounds that Murdock's death was not accidental and was contributed to by commission of a felony. Plaintiff sued Monumental and Monumental filed a motion for summary judgment. The trial court granted summary judgment for Monumental, and Plaintiff now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 6 At issue is whether Murdock's death was accidental and whether his death was contributed to by commission of an assault or felony. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). We review a grant of summary judgment for correctness. *See Carter v. Milford Valley Mem'l Hosp.*, 2000 Utah Ct.App. 021, ¶ 12, 388 Utah Adv. Rep. 18, 996 P.2d 1076. "If a trial court interprets a contract as a matter of law, as was the case here, we accord its construction no particular weight and review its actions under a correction-of-error standard." *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988).

## ANALYSIS

### Commission of a Felony

¶ 7 The Policy in the present case excludes from coverage "loss which is caused by, results from, or [is] contributed to by ... committing an assault or felony."[1] Plaintiff argues that there was no causal connection between her husband's crimes and his death because her husband was not actually engaged in a felony at the time he was killed but rather had withdrawn. We disagree.

¶ 8 Plaintiff relies on *LDS Hospital v. Capitol Life Insurance Co.*, 765 P.2d 857

(Utah 1988), in which an insured was injured and a third party was killed in an accident the insured caused while driving intoxicated. *See id.* at 858. The policy in that case excluded claims "arising out of an attempt at assault or felony," and the insurance company denied coverage on grounds that the third party's death rendered the accident a felony. *Id.*

¶ 9 The supreme court held the exclusion inapplicable. *See id.* at 860. The court noted that the insured's injuries resulted from the accident he caused while driving intoxicated, which was not a felony, and not from the death of the third party, which did not occur until after the accident. *See id.* at 860. Accordingly, the felony—the third party's death—was merely "incidental" to the insured's injuries, and the insurer did not "establish[ ] the required causal relationship between the insured's injuries and a felony violation of law." *Id.*

¶ 10 Relying on *LDS Hospital*, Plaintiff argues the insured "must have been actually engaged in a felony at the time and place of the injury." *Id.* (citing *Penn Mut. Life Ins. Co. v. Gibson*, 160 Colo. 462, 418 P.2d 50 (1966)). Plaintiff argues that her husband was not engaged in a felony at the time of his death because he had "withdrawn" from his attack, thereby breaking the causal connection between his crimes and his death. Even assuming that, under Utah law, withdrawal would break the required causal connection, and even if Murdock's flight could be construed as a withdrawal from the assault, it was not a withdrawal from the robbery but rather an effort to retain its fruits. The mere fact that Murdock managed to escape as far as the street before Moser was able to give chase did not interrupt the causal connection required to exclude coverage and thus did not take Murdock outside the scope of the exclusion clause.

¶ 11 Additionally, the exclusions clause in the present case is broader than that in *LDS Hospital*. Although the "arising out of" lan-

---

1. Plaintiff argues this exclusion is ambiguous because it is not clear whether the insured or a third party must commit the assault or felony. We conclude the exclusion is not ambiguous and plainly contemplates assault or felony committed by the insured. Because the Policy is not ambiguous, we interpret it according to its plain terms. *See First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 837 (Utah 1998).

guage in the policy from *LDS Hospital* is broader than the "caused by" or "resulted from" language in the present Policy, the present Policy also excludes coverage when death is "contributed to" by the commission of a felony. This language is broader than the exclusion language in *LDS Hospital.*[2]

¶ 12 We acknowledge that a clause excluding loss "contributed to by" commission of a felony may not exclude a more remotely caused death, as if, for example, the insured had been killed by a fortuitous auto accident while driving home from the robbery. However, we hold that the loss inflicted by Murdock's victim during Murdock's immediate flight from a violent felony in order to preserve the fruits of that felony falls within the scope of the Policy clause excluding loss "contributed to by" commission of an assault or felony.[3]

### Accidental Death

¶ 13 We further conclude that the trial court did not err in ruling that Murdock's death was not accidental. The coverage clause of the policy states: "When we receive due proof that a Covered Person dies, we will pay the benefits shown on the Schedule of Benefits to his named Beneficiary; provided: (1) Death occurs as a direct result of an Injury." The Policy defines injury as "bodily injury caused by an accident."

¶ 14 Our supreme court long ago defined "accidental" in the context of an accidental death insurance policy:

The word is descriptive of means which produce effects which are not their natural and probable consequences.... An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual

design, or it falls under the maxim that every man must be held to intend the natural and probable consequences of his deeds.

*Richards v. Standard Accident Ins. Co.,* 58 Utah 622, 200 P. 1017, 1023 (1921), *quoted in Hoffman v. Life Ins. Co. of N. Am.,* 669 P.2d 410, 415 (Utah 1983). "Thus, a person is a victim of an accident when, from the victim's point of view, the occurrence causing the injury or death is not a natural and probable result of the victim's own acts." *Hoffman,* 669 P.2d at 416.

¶ 15 Our supreme court has held that "if the insured uses [a] weapon and specifically threatens death or serious bodily injury to another, and that conduct results in the death of the insured, the death is not accidental." *Id.* at 418. Under such circumstances, "the insured should expect or anticipate that the threatened individual will very likely respond with deadly force."[4] *Id.* (remanded for determination of whether deceased had actually threatened police with gun).

¶ 16 Plaintiff argues that Murdock could not have expected or anticipated that his victim would chase him with a vehicle through a field littered with construction debris. However, for the insured's death to be nonaccidental, the insured need not anticipate the particular means by which his victim will defend himself or seek to recover stolen property. All that is required is that the deceased should have known that the threatened individual will very likely respond with deadly force. As in *Hoffman,* Murdock should have known that his threat to shoot, attack on, and robbery of Moser would be met with potentially deadly force.

¶ 17 Plaintiff also relies on Moser's assertion that he did not intentionally run over and kill Murdock. However, we do not

---

2. For example, *Blacks Law Dictionary* defines "contributing cause" as "any factor which contributes to a result, though its causal nexus may not be immediate." *Black's Law Dictionary* 328 (6th ed.1990).

3. The additional authorities from other jurisdictions that Plaintiff cites are inapposite in that they involve either very different exclusionary

clauses or different factual circumstances attending the insured's death.

4. Other jurisdictions similarly require an actual threat for the death to be ruled nonaccidental. *See, e.g., Isoard v. Mutual Life Ins. Co.,* 22 F.2d 956, 957 (8th Cir.1927) (holding death accidental where deceased insured was shot when raising shotgun to his shoulder).

look to the level of violence with which a victim subjectively intends to meet the insured's attack: "The critical question with respect to this aspect of the law is [what] *the insured should have expected.*" *Hoffman,* 669 P.2d at 418 (emphasis added).

¶ 18 Plaintiff finally argues that Murdock's death was accidental because he was fleeing from his crime at the time of his death. Plaintiff cites *Sanders v. Metropolitan Life Ins. Co.,* 104 Utah 75, 138 P.2d 239 (1943), for the proposition that death is not a natural and probable consequence of fleeing from a crime.

¶ 19 In *Sanders,* the insured and a companion had escaped from an industrial school in a stolen car. *See id.* at 240. The insured died when the driver crashed while eluding a police officer in a high speed chase. *See id.* at 242. Recovery under an accidental death policy was allowed:

> [The insured] was fifteen and his companion, the driver of the car, fourteen years of age. They were not armed, nor were they reputed to be dangerous characters. It cannot be said that either of the boys anticipated injury or death to result from this automobile ride, fleeing from someone they assumed to be an officer. Any number of conjectures may be indulged in, but the most that can be said is that they hoped to get away and avoid being returned to the Industrial School from which they had fled.

*Id.*

¶ 20 We do not read into *Sanders* the broad proposition Plaintiff urges: that death during flight from a violent felony is always accidental. *Sanders* tells us only what a delinquent juvenile on the run from an industrial school should have anticipated. *See id. Hoffman,* on the other hand, clearly expresses what one who engages in a violent felony should expect: that the victim "will very likely respond with deadly force." *Hoffman,* 669 P.2d at 418. Murdock's victim responded to Murdock's assault and robbery with force that proved deadly. We therefore conclude Murdock's death was not accidental.

## CONCLUSION

¶ 21 Murdock's death was contributed to by committing a felony because there was a direct causal relationship between the felonies committed and Murdock's death. Additionally, Murdock's death was not accidental because he should have expected that his victim might respond to a threat of death, an assault, and a robbery with deadly force. Accordingly, the trial court properly granted summary judgment for Monumental. We therefore affirm.

¶ 22 WE CONCUR: RUSSELL W. BENCH, Judge, and GREGORY K. ORME, Judge.