# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Filing Date: May 26, 2009

**NO. 30,465**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JULIET FLORES,**

Defendant-Appellant.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen Bridgforth, District Judge**

Gary King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**DECISION**

**DANIELS, Justice.**

{1}    In this case we address a situation in which a police officer lawfully stopped a car and determined that the driver had an outstanding arrest warrant. The question before us is whether the officer's subsequent request for a passenger's driver's license and performance of a warrants check were unreasonable under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. We hold there is substantial evidence supporting the district court's finding that the officer's actions were reasonable and constitutionally permissible efforts to find a sober, licensed driver for the stopped vehicle. The disclosure of an outstanding warrant on the passenger and the subsequent discovery of drugs on her person during the search incident to her own arrest on that warrant were therefore not the fruits of an unlawful search or seizure. We reverse the Court of Appeals' contrary holding and affirm the district court's denial of Defendant's motion to suppress. Defendant's conviction is affirmed.

**I.    BACKGROUND**

{2}    Shortly after midnight, Officer Ramiro Rivera of the Las Cruces Police Department observed a car leave the parking lot of a bar and drive onto a city street

with its lights off. After observing the car as it approached an intersection, stopped for a red light, and then proceeded down the street without ever turning on its lights, Officer Rivera engaged his emergency equipment and stopped the car. He asked the driver for her license, insurance, and vehicle registration, called in for a records check on the information, and learned that computer records reflected an outstanding warrant for the driver's arrest.

{3}     After learning of the warrant for the driver's arrest, Officer Rivera asked Officer Dominguez, another officer who had arrived on the scene, to identify who else in the car had a valid driver's license, so that the vehicle would not need to be towed. Two male passengers in the back seat were determined to be underage and intoxicated. When the officers ran a warrants check on Defendant's license, they found out that she also had an outstanding arrest warrant. After this discovery, the driver provided information that she had already gone to court on her apparently outstanding warrant, and the officers decided not to take her into custody. Defendant was arrested on her own warrant, and a bag of cocaine was found on her person during her booking search.

{4}     Defendant filed a motion to suppress the drug evidence under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New

Mexico Constitution, arguing that the officers had no constitutionally permissible cause to ask her for identification and conduct a records check. Officer Rivera testified at the suppression hearing that he had been following his usual practice of looking for a sober licensed driver to drive a stopped vehicle when the driver is unable to continue driving to avoid having the vehicle towed. The district court denied Defendant's motion to suppress, finding that Officer Rivera's efforts to find a sober, licensed driver for the vehicle was a legitimate inquiry and not a guise for a "fishing expedition." Defendant subsequently entered a conditional guilty plea to one count of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(D) (2005), reserving the right to appeal the denial of her motion to suppress.

{5} In a memorandum opinion, the Court of Appeals reversed the district court, holding that the officer's request for Defendant's driver's license and the use of its information to conduct a warrants check constituted an unlawful detention of Defendant. *See State v. Flores*, No. 27,180, slip op. at 7 (N.M. Ct. App. Apr. 10, 2007). The opinion noted that Defendant was not responsible as a passenger for properly registering or insuring the vehicle, was not responsible for assuring the vehicle could be driven home, and was not specifically asked by the officers if she

4

wanted to drive the vehicle home. *Id*. at 5-6. While the Court expressed doubt that the true purpose of the request for Defendant's identification was made for the purpose of finding a driver of the vehicle, its stated basis for its reversal of the district court was "that the officers efforts to find a sober, licensed driver for the vehicle was not a legitimate inquiry and the district court erred in denying Defendant's motion to suppress." *Id*. at 6.

{6}     We granted the State's petition for writ of certiorari, and we now reverse the decision of the Court of Appeals.

## II.     STANDARD OF REVIEW

{7}     We review a district court's ruling on a motion to suppress as a mixed question of fact and law. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95. "[O]ur review of this case involves two parts:  the first is a factual question, which we review for substantial evidence; the second is a legal question, which we review de novo." *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We view the evidence in a light most favorable to the prevailing party, so long as substantial evidence exists to support the findings. *Id.* ¶ 18. As a reviewing court, we do not reweigh the evidence, because it is within the unique province of the district court to resolve conflicts in the evidence and weigh the

credibility of witnesses. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964; *see State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 ("Conflicts in the evidence, even within the testimony of a witness, are to be resolved by the fact finder at trial."); *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) ("Resolution of factual conflicts, credibility and weight of evidence is particularly a matter within the province of the trier of fact." (internal quotation marks and citations omitted)). The question is whether the district court's result is supported by substantial evidence, not whether the district court could have reached a different conclusion. *See Jason L.*, 2000-NMSC-018, ¶ 10 ("The fact that another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence."). Once we review the district court's findings of the case's historical facts, we make a de novo determination of the constitutional reasonableness of the officer's conduct. *State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994).

**III.   DISCUSSION**

{8}     Because Defendant failed to articulate how the New Mexico Constitution would afford her any greater protection in this situation than would the United States Constitution, "we only address the issue under general Fourth Amendment law."

6

*State v. Duran*, 2005-NMSC-034, ¶ 22, 138 N.M. 414, 120 P.3d 836. Our precedents require that we analyze the constitutionality of routine traffic stops through the framework articulated by *Terry v. Ohio*, 392 U.S. 1 (1968). *Duran*, 2005-NMSC-034, ¶ 23. The reasonableness of a traffic stop requires "balancing the public interest in the enforcement of traffic laws against an individual's right to liberty, privacy, and freedom from arbitrary police interference." *Id*. ¶ 22.

{9} The scope of an officer's activities or questions during a traffic stop must both be justified at the inception of the stop and also "be reasonably related to the circumstances that initially justified the stop." *Werner*, 117 N.M. at 317, 871 P.2d at 973; *see Duran*, 2005-NMSC-034, ¶ 35 (questioning by an officer must be reasonably related in scope to the circumstances which justified the stop). If we determine the scope of a routine traffic stop was expanded beyond its underlying justification, we evaluate whether the officer had reasonable suspicion that other criminal activity might have been afoot. *Duran*, 2005-NMSC-034, ¶¶ 23, 35. The permissible intrusion of the initial stop of the vehicle does not automatically become a foot in the door for all investigatory purposes. *See State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.2d 922 ("An officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer

7

unjustifiably expands the scope of the detention or, without a valid factual basis, makes inquiries about other criminal activity unrelated to the traffic violation."). We determine the reasonableness of the officer's action by objectively evaluating the particular facts of the stop under the totality of the circumstances. *Duran*, 2005-NMSC-034, ¶¶ 23, 35.

{10} In New Mexico, all occupants of a vehicle are necessarily seized for the purposes of the Fourth and Fourteenth Amendments of the United States Constitution during a traffic stop and therefore have standing to challenge the constitutionality of the stop of the vehicle. *See id.* ¶ 22 ("An automobile stop and the attendant detention of its occupants is a 'seizure' under the Fourth and Fourteenth Amendments." (quoting *Werner*, 117 N.M. at 317, 871 P.2d at 973)).

{11} In this case, we need not address the first part of the *Terry* analysis because Defendant does not challenge the validity of the initial stop of the automobile. Defendant's challenge is focused on her argument that Officer Rivera's asking for her identification and running a warrants check after he lawfully stopped the car constituted unreasonable searches or seizures. This requires us to determine both (1) whether substantial evidence supported the district court's finding that the purpose of the officer's conduct was to find an appropriate substitute driver for the vehicle

after it was determined that the driver would have to be arrested, and (2) whether that purpose is constitutionally permissible.

**A.    Substantial Evidence Review**

{12}    The district court's order denying Defendant's motion to suppress expressly found that "Officer Ramiro Rivera's effort to find a sober, licensed driver for the car was a legitimate inquiry and not a guise for a 'fishing expedition.'"  We first evaluate whether substantial evidence exists to support those findings.  *See Attaway*, 117 N.M. at 144, 870 P.2d at 106 ("Substantial evidence is the measure of proof, or the quality and quantity of the evidence, required to support the findings of the trial court." (internal quotation marks and citation omitted)).  This Court has emphasized that resolution of factual conflicts, credibility of witnesses, and the weight of evidence is particularly a matter within the province of the trier of fact.  *State v. Bloom*, 90 N.M. 192, 194, 561 P.2d 465, 467 (1977).

{13}    In *Bloom*, a district court had denied a motion to suppress in reliance on testimony that officers were conducting a traffic roadblock for the purposes of checking driver's licenses and car registrations, rather than for the purpose of engaging in a fishing expedition.  *Id*. at 193, 561 P.2d at 466.  The Court of Appeals reversed the district court and held that the stop and search of a vehicle and seizure

of marijuana by police officers violated the defendant's right to be free from unreasonable searches and seizures. *Id.* The Court of Appeals opinion conceded that the officers' professed purposes for stopping vehicles would have been lawful, but the Court nevertheless rejected the district court's factual findings and determined that requesting the defendant's driver's license and registration was only a pretense to disguise the officers' true purpose of engaging in a general fishing expedition. *Id.*

{14} This Court reversed the Court of Appeals, concluding that it went beyond the permissible scope of appellate review by not limiting itself to whether the evidence substantially supported the trial court's findings. *Id.* at 194, 561 P.2d at 467. The district court, "as the finder of the facts, resolved the conflicts against the defendants, and it was not within the province of the majority of the Court of Appeals to resolve the conflicts the other way." *Id.*

{15} As in *Bloom*, the realities of this factual situation were for the district court to determine. The district court heard Officer Rivera's testimony and believed it to be credible. The court not only specifically found that the officer's request for Defendant's identification and conducting the computer check were for the purpose of finding a lawful and licensed driver to drive the car away, it also specifically

10

made a separate finding that in doing so the officer's purpose was not to engage in a general fishing expedition.

{16}    We recognize that there is evidence in the record that could have supported contrary findings, such as evidence that the officers did not ask Defendant if she was even willing to drive the car away to keep it from being towed. But the fact that different inferences could have been drawn is not a justifiable basis for an appellate court to conclude that the evidence fails to provide substantial support for the findings made by the trial court. *See Jason L.*, 2000-NMSC-018, ¶ 10. Therefore, neither the Court of Appeals nor this Court is at liberty to disregard the district court's findings. We hold that on the evidence in the record, viewed in the light most favorable to the district court's findings, there was substantial evidence supporting that court's findings that the officers were looking for a licensed driver to drive the car away, and that they were not engaged in a fishing expedition.

**B.    Whether the Identification Request and Computer Check Were Reasonable**

{17}    We next determine, as a matter of law, whether it was reasonable for the officer to request Defendant's identification and run a warrants check for the purpose of determining whether anyone in the car would be a lawful driver who could be entrusted with the car, after a decision was made to arrest its driver. *See*

11

*Jason L.*, 2000-NMSC-018, ¶ 19 (viewing circumstances surrounding a stop as a factual inquiry, while reviewing reasonableness of a detention de novo).

{18} There is no constitutional impediment to a law enforcement officer's request to examine the driver's license and vehicle registration of a driver during a traffic stop and to run a warrants check. *Duran*, 2005-NMSC-034, ¶ 24; *see State v. Reynolds*, 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) (holding a driver has no expectation of privacy in license, registration or insurance documents); *see also* NMSA 1978, § 66-5-16 (1985) ("Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle and shall display the license upon demand of a magistrate, a peace officer or a field deputy or inspector of the division."). Generally, an officer may ask questions during a traffic stop so long as the questions are reasonably related to the scope of the initial justification for the stop. *Duran*, 2005-NMSC-034, ¶ 42.

{19} The question we now address is whether asking Defendant, as a passenger, for identification and running a warrants check was reasonable under the circumstances, and whether these actions effectuated the purpose of the stop. "The particular facts of each stop and the intrusiveness of the questioning will dictate what questions are reasonable or unreasonable." *Id.* ¶ 35. In *Duran*, this Court determined that it was

permissible for an officer to ask questions of the travel plans of the occupants of a car, after he had made a lawful stop and then had learned additional facts that aroused his suspicions. *Id.* ¶ 42. The Court balanced the officer's reasonable purposes for asking the questions and the fact that the questions resulted in no significant prolongation of the stop against the "limited intrusion into [d]efendant's privacy" and determined that no constitutional intrusion had resulted. *Id.* ¶ 37.

{20} We conclude that asking Defendant for her identification and running a warrants check on her was reasonably related to the initial justification for the stop and to the developing events that had resulted from it. Putting the car into the care of a lawfully licensed and capable driver would not only avoid the trouble and expense to its owner of a towing and impoundment, it would result in allowing all passengers to proceed on their journey more rapidly than if the car were towed and impounded. There was no impermissible prolongation of the stop. There was no evidence that Defendant was ever deprived of her freedom of movement in any respect, other than the fact that the car in which she was riding already had been lawfully stopped because of the conduct of its driver.

{21} While it may well have been preferable for the officer to inquire as to whether either the driver or passenger wanted the passenger to drive the vehicle in the event

13

the driver was arrested, there is no constitutional requirement that the officer do so. It was not unreasonable for the officer to assume Defendant would be willing to drive her friend's car after the friend's arrest, rather than have the car towed and impounded. Viewed objectively, asking Defendant for her identification and running a warrants check were not constitutionally unreasonable under these circumstances. Therefore, there is no initial illegality that would make it necessary to engage in any fruit of the poisonous tree analysis regarding the ultimate discovery of the cocaine.

**C.    Other Potential Issues**

{22}    Our determination that the officers did not act unreasonably in their efforts to find a suitable person to drive the car from the scene, the only question addressed by either court below, makes it unnecessary to discuss alternative theories the State has presented to us under the "right for any reason" doctrine. *State v. Boyett*, 2008-NMSC-030, ¶ 25, 144 N.M. 184, 185 P.3d 355; *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. Anything that we could opine on those additional theories would be dicta in the context of our resolution of this case, and it is neither desirable nor proper that we reach out to engage in those unnecessary discussions.

## IV. CONCLUSION

{23} Based on our determinations that the district court's findings were supported by substantial evidence, and that the officer's efforts to find a lawful driver were not constitutionally unreasonable under the circumstances of this case, we conclude that the resulting discovery of the cocaine on Defendant's person was not the fruit of an unreasonable search or seizure. We therefore reverse the decision of the Court of Appeals and affirm the district court's denial of Defendant's motion to suppress.

{24} **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

15