[No. A033944. First Dist., Div. Three. Sept. 17, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ROWDY WAYNE BOWEN, Defendant and Appellant.

**COUNSEL**

Claudia W. Brisson for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Frances M. Dogan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—Defendant and appellant Rowdy Wayne Bowen appeals from the judgment of the Superior Court of San Francisco County entered after his motion to suppress evidence pursuant to Penal Code section 1538.5 was denied and he pled guilty to a violation of Penal Code section 211 (robbery) and was sentenced to the midterm of three years and committed

to the California Youth Authority to serve his term pursuant to Welfare and Institutions Code section 1731.5. Appellant contends on appeal that (1) his detention until the arrival of the victim of the robbery for identification amounted to an arrest without probable cause; (2) after the victim failed to identify him there was no probable cause for his arrest; and (3) the trial court failed to adequately state reasons for denying probation.

I

San Francisco Police Officer Reno Rapagnani was on routine patrol with his partner Jeremiah Morgan in a marked patrol car on May 25, 1985. Around 12:40 p.m. the officers heard a report on the police radio of a purse snatch in the Stockton Street Tunnel and went to that area to look for suspects. Officer Rapagnani remembered that the initial report that he received stated that the White female suspect was being chased by a Black male. Over a series on radio broadcasts, a more detailed description was given of the female suspect—a White female with red hair who was wearing a three-quarters length coat.

At the north end of the Stockton Street Tunnel (the purse snatch had occurred at the south end of the tunnel) the officers saw a person who they believed matched the description of the White female. The officers exited their patrol car and approached the White suspect. When the officers approached the White "female" suspect, they saw a Black male sitting on stairs that were adjacent to where the White suspect was standing. The Black male was holding a purse. The White suspect was determined to be appellant who at the time was wearing a long red wig.

Both suspects were detained for approximately 25 minutes during which time the victim was being brought to the scene in order to ascertain whether she could identify the suspects. Both suspects were handcuffed and positioned so that they faced the street. Officer Rapagnani testified that he stayed with the suspects while his partner, Officer Morgan, spoke to the victim upon her arrival at the scene of the detention. Officer Morgan signaled to his partner that an identification had been made.

The suspects were handcuffed again and transported to the police station by other police officers. Officers Morgan and Rapagnani remained at the scene in order to retrieve the purse that the Black suspect had been holding. Some time before the suspects were transported to the police station, Officer Rapagnani learned from his partner that the victim had positively identified the Black male, but in regards to appellant the victim had merely stated that the three-quarter length coat appellant was wearing was similar to the coat that her assailant had worn.

After being advised of their constitutional rights and waiving them, John Hill, the Black male suspect, and appellant claimed joint ownership of the purse Hill had been holding. Appellant told Officer Rapagnani that a compact in the purse belonged to the victim.

After Officer Rapagnani testified, the suppression hearing was continued in order to enable the trial court to listen to the taped police record of radio transmissions regarding this incident. The tape is a chronological collection of citizen reports to the police. The tape also contains radio transmissions from police units and police radio dispatchers. The following is a summary of this tape as far as it is pertinent to the issues raised in this appeal.

The first citizen report was received at 12:10 p.m. on May 25, 1985. This citizen stated that a purse snatch had occurred approximately three minutes earlier at the Stockton Street Tunnel. The suspect is described as a White female with long blonde hairs, five feet, eight inches tall, weighing one hundred forty pounds and wearing a tan, three-quarters length coat. The first citizen also reports that the suspect is being chased by a six foot, one inch tall Black man.

The second report was received at 12:12 p.m. from the victim, Florence Yee. Yee reported that her purse was snatched and she was knocked to the ground. She states that two suspects came from behind her and described one as a Black man. In her opinion the two people were together.

The third report was received at 12:15 p.m. from a citizen who stated that a White, red-headed female and a Black "kid" were lifting purses in the vicinity of Pine and Stockton Streets. This citizen reported that he heard a woman scream and saw the two suspects grab her purse and run through an alley. Apparently before he actually saw the purse being snatched he saw the two suspects going through a purse. The citizen said the last time he had seen the two suspects they were walking past Cogswell College.

The next part of the tape consists of radio dispatches between the police which give the information received from the three citizens. After the last dispatch describing the White female as having red hair, a police unit reported seeing a female matching said description. This police unit stopped a White suspect having red hair and a Black male and asked that the victim to be brought to the scene of the stop. This unit also reported that the White suspect was a female "impersonator." One radio message informs the unit that has stopped the suspects that the unit transporting the victim is caught in traffic.

## II

Appellant does not contest the legal justification for his detention, but rather argues that since he was handcuffed to a guardrail for 25 min-

utes, during which time the victim was being brought to the scene of the stop, he was not merely being detained but rather was under arrest. Appellant in an effort to support his position that he was in fact under arrest points to the fact that he was handcuffed and the length of time he was handcuffed (25 minutes). He asserts that less intrusive means could have been employed, although he does not mention what less intrusive alternatives were open to the officers.

■ A detention occurs if an individual is stopped because the officer suspects he or she may be personally involved in some criminal activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957].) The scope of the intrusion permitted when a person is detained "will vary to some extent with the particular facts and circumstances of each case. This much however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." (*Florida* v. *Royer* (1983) 460 U.S. 491, 500 [75 L.Ed.2d 229, 238, 103 S.Ct. 1319].) The United States Supreme Court has refused to adopt "any outside time limitation" on a lawful detention. (*United States* v. *Place* (1983) 462 U.S. 696, 709 [77 L.Ed.2d 110, 122, 103 S.Ct. 2637].)

In *United States* v. *Sharpe* (1985) 470 U.S. 675, 686-687 [84 L.Ed.2d 605, 615-616, 105 S.Ct. 1568], the United States Supreme Court stated the following with regards to the length of a detention: "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. [Citations.] A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing. [Citation.] A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable.' [Citations.] The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it."

■ In this case, the police officers immediately radioed their dispatcher to request that the victim be transported to the detention scene in order

for the victim to identify the suspects as her assailants or to state that the suspects where not her assailants. The police tape contains a recording of Officer Rapagnani or Officer Morgan asking for an estimation of the time of arrival of the victim. The dispatcher radioed back that the unit transporting the victim was caught in traffic and would arrive shortly.

Bringing a victim to the place where suspects have been stopped for identification purposes has long been encouraged when the identification process occurs shortly after the crime. Said procedure is in the best interests of both suspects and the police because prompt identification aids in rapidly exonerating the innocent and discovering the guilty. Prompt identification procedures also encourage reliability. (*People* v. *Hunt* (1977) 19 Cal.3d 888, 893 [140 Cal.Rptr. 651, 568 P.2d 376]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 714 [83 Cal.Rptr. 608, 464 P.2d 64], cert. den. 406 U.S. 972 [32 L.Ed.2d 672, 92 S.Ct. 2418]; *People* v. *Colgain* (1969) 276 Cal.App.2d 118, 129 [80 Cal.Rptr. 659].) Since the "police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant" (*United States* v. *Sharpe, supra,* at p. 686 [84 L.Ed.2d at p. 616]), the 25-minute detention was not unreasonable and did not amount to an arrest.

The fact that appellant was handcuffed while detained awaiting the victim's arrival does not mean that appellant was under arrest during this time. In *People* v. *Craig* (1978) 86 Cal.App.3d 905, 912-913 [150 Cal.Rptr. 676], the Court of Appeal upheld a temporary detention where the defendants were placed in the back seat of a secured patrol vehicle while waiting the victim's arrival. Like *Craig*, the officers in the instant case properly secured appellant while awaiting the victim.

## III

■ Appellant next contends that the police lacked probable cause to arrest him given the varying citizens' reports and the fact that the victim merely stated that appellant was wearing a jacket similar to the jacket her assailant wore.

Probable cause for arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) Appellant was wearing a jacket similar to the one worn by the robber and otherwise matched the description of one of the robbers given by the third citizen. He was in the company of a person who was identified by the victim as one of the robbers and this person was holding a purse.

Additionally, appellant was stopped in the vicinity of the location where the crime was committed shortly after the crime. These facts clearly amount to probable cause to arrest.

## IV

Appellant also contends that the trial court failed to adequately state reasons for denying probation and for sentencing him to prison for three years. The People concede that the trial court failed to state reasons for denying appellant probation and therefore agree that this case must be remanded for resentencing.

The conviction is affirmed and the matter is remanded for resentencing in accordance with this opinion.

Barry-Deal, J., and Merrill, J., concurred.