Filed 10/31/13  P. v. Ramirez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIRST APPELLATE DISTRICT**

**DIVISION FIVE**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO ALFREDO RAMIREZ, JR.,<br><br>    Defendant and Appellant. | A138037<br><br>(Sonoma County<br>Super. Ct. No. SCR-618606) |

Francisco Alfredo Ramirez, Jr. appeals from a judgment sentencing him to 11 years in prison following his no contest plea to a single count of first degree robbery and his admission of a prior robbery conviction that rendered him eligible for a five-year sentence enhancement and a doubled term under the "Three Strikes" law.  (Pen. Code, §§ 211, 667, subd. (a), 1170.12, subds. (a), (b) & (c)(1).)[1]  He contends:  (1) the trial court should have granted his motion to suppress evidence under section 1538.5; (2) the court should have granted his motion to dismiss the prior "strike" under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*); and (3) he is entitled to additional presentence conduct credits under section 4019.  We affirm.

## I.  FACTS AND PROCEDURAL HISTORY

In light of appellant's plea, the facts are taken from the preliminary hearing and the hearing on appellant's motion to suppress.

---

[1] Further statutory references are to the Penal Code.

1

Edgar P. and Eric Y. shared an apartment in a complex in Santa Rosa and worked at the same restaurant. On the night of May 10, 2012, Edgar walked to a store across the street from his apartment. As he was returning home, a man asked him for a cigarette. When Edgar said he did not smoke, the man punched him several times in the face. Edgar fled, ultimately returning to his apartment and shutting the door behind him. Four men, including Edgar's original attacker, entered the apartment.

Eric was in the living room of the apartment when Edgar entered and the four men followed. The men began assaulting both Edgar and Eric, yelling " 'Fucking illegal(s),' " and " 'Where is your money?' " Two of the men threw Eric on the ground and dragged him outside the apartment, where they continued to struggle. When Eric's iPhone fell out of his pocket, one of the men grabbed it and they ran away.

On the evening of May 11, Officer Tomlin of the Santa Rosa Police Department contacted Edgar and Eric at the restaurant where they worked and interviewed them about what had happened the previous night. Both Edgar and Eric had injuries as a result of the attack. Edgar told Tomlin the assailants were associated with apartment No. 910 of the complex where they lived. Edgar described the men as "[g]enerally younger Hispanic males with several tattoos."

On the afternoon of May 12, Tomlin and two other officers went to the apartment complex where Edgar and Eric lived. They saw four men inside the enclosed patio of apartment No. 910, who generally fit Edgar's and Eric's description of the assailants and who included appellant and his codefendant Juan Christopher Cruz. Tomlin asked the men if they would come outside and talk with him, and the men agreed. The men walked into the apartment from the patio area and came out the front door. The officers patted them down for weapons and asked them to sit down next to the wall of the patio. The men were cooperative throughout this encounter and no weapons were ever drawn by the officers.

Tomlin got Eric, who was home in his apartment, to do an in-field lineup. Eric identified appellant and Cruz as two of the attackers and said the other two men had not

been involved. About two to three minutes passed between the time Tomlin first contacted the four men and the time of the lineup.

Appellant and Cruz were handcuffed and read their rights under *Miranda v. Arizona* (1966) 384 U.S. 436, while the other two men were released. Appellant initially declined to give a statement, but after he was placed in the patrol car, he told the officers he had stolen the iPhone and asked them not to arrest his friends. Tomlin asked appellant where the iPhone was located, and appellant said it was inside apartment No. 910 in a DVD case next to the computer. Police found the phone where appellant said it would be. When appellant was booked into the jail, a package containing 4.7 grams of methamphetamine was found taped underneath his genitals.

The district attorney filed an amended information that charged appellant and Cruz with several felony counts and included recidivist allegations as to each. Appellant filed a motion to suppress evidence of, inter alia, the in-field identification and the iPhone, arguing they were the product of an unreasonable warrantless detention. The court denied the suppression motion following a hearing, concluding the police officers had acted reasonably during the encounter and had sufficient cause for the weapons patdown and detention.

Appellant entered into an agreement with the district attorney that called for him to plead no contest to one count of first degree robbery and to admit a prior felony conviction rendering him eligible for a five-year serious felony enhancement and a doubled sentenced under the Three Strikes law. (§§ 211, 667, subd. (a), 1170.12.) Under the terms of the plea agreement, appellant would be sentenced to no more than 11 years in prison (the three-year lower term on the robbery, doubled under the Three Strikes law, plus five years for the serious felony enhancement), but could "bring a *Romero* motion, and argue for probation." At sentencing, the court denied appellant's request to strike the prior conviction and imposed the 11-year sentence indicated in the plea agreement.[2]

---

[2] The charges against Cruz were also resolved by plea agreement. Cruz is not a party to this appeal.

## II.  DISCUSSION

A.  *Motion to Suppress*

Appellant argues the trial court should have granted his motion to suppress because the in-field identification was the product of an illegal detention.  When, as here, the underlying facts are undisputed, the issue is one of law subject to our independent review.  (*People v. Turner* (2013) 219 Cal.App.4th 151, 159.)  We conclude the police acted lawfully.

The Fourth Amendment protects individuals against unreasonable searches and seizures.  (*People v. Robles* (2000) 23 Cal.4th 789, 794.)  Police contacts with individuals fall into three general categories:  consensual encounters, which do not involve any restraint and require no justification; detentions of limited duration, scope and purpose, which require reasonable, articulable suspicion the individual was or will be involved in criminal activity; and formal arrests (or comparable restraints on a person's liberty), requiring probable cause to believe the person has committed a crime.  (*People v. Hughes* (2002) 27 Cal.4th 287, 327–328; *In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

Assuming the officers' contact with appellant and his companions began as a consensual encounter when Tomlin asked to speak to them, that encounter became a detention when the men were patted down for weapons and directed to sit next to the wall of the patio.  (See *People v. Coulombe* (2000) 86 Cal.App.4th 52, 57, fn. 3 (*Coulombe*).)  We must therefore determine whether the detention was reasonable.  " 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]"  (*People v. Hernandez* (2008) 45 Cal.4th 295, 299; see generally *Terry v. Ohio* (1968) 392 U.S. 1, 21; *People v. Souza* (1994) 9 Cal.4th 224, 230.)  The standard of reasonable suspicion is "less demanding than probable cause 'not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense

4

that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' " (*People v. Souza*, at pp. 230–231.)

The detention in this case was lawful because it was objectively reasonable to suspect appellant and the three other men on the patio were involved in the assaults and robbery in the apartment complex two nights before. (See *People v. Leath* (2013) 217 Cal.App.4th 344, 354 [officers informed that robbery was committed by two African-American men in their 20's and driving a dark SUV had reasonable suspicion to detain a defendant matching the physical description and seen a few blocks away near a parked SUV with an open door].) Not only did the four men match the physical description of the suspects in terms of their age, ethnicity and tattoos, they were in the patio of the apartment with which the suspects were associated. (See *In re Carlos M.* (1990) 220 Cal.App.3d 372, 382 [victim raped by six men provided particularized description of some suspects (age, hair and eye color, hair length and ethnicity); detention of defendant proper where he was found near the crime scene and in the company of a man matching that description]; *People v. Fields* (1984) 159 Cal.App.3d 555, 564 [upholding detention as reasonable because defendant was seen in general vicinity of the crime and generally matched the description of the suspect's attire, race, gender, height, build, and general age group]; *People v. Craig* (1978) 86 Cal.App.3d 905, 911–912 [officers acted reasonably in stopping suspects who did not perfectly match victim's description, but were same race, gender, build].)

Moreover, the scope and duration of the detention were not unreasonable, given that only two or three minutes passed between the time of the initial contact and Eric's identification of appellant and Cruz. The police " 'diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant . . . .' " (*People v. Bowen* (1987) 195 Cal.App.3d 269, 274 [officers reasonably detained defendant for 25 minutes in handcuffs while victim was brought to the scene for identification].)

We need not separately address the legality of the patsearch for weapons, as it yielded no incriminating evidence and is not separately challenged by appellant. We

5

note, however, that "[a] limited, protective patsearch for weapons is permissible if the officer has 'reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger.' [Citation.]" (*In re H.H.* (2009) 174 Cal.App.4th 653, 657.) Here, the officers had reasonable cause to believe the four men on the porch had recently been involved in a violent assault. Given the number of suspects present and the nature of the suspected offense, the officers were entitled to conduct a brief patdown to insure their safety during the lineup. (See *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1060 [certain crimes carry with them a propensity for violence, allowing a patdown of persons suspected of those crimes without further justification]; *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1229–1230 [facts supporting patsearch included that officer was outnumbered]; *People v. Limon* (1993) 17 Cal.App.4th 524, 534–535 [though not necessarily sufficient by itself, fact officers were outnumbered was a factor supporting patdown].)

B. Romero *Motion*

Appellant argues the trial court abused its discretion in denying his motion to dismiss his "strike" under *Romero*, *supra*, 13 Cal.4th at pages 529–530. We disagree.

When ruling on a *Romero* motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

In urging us to conclude the trial court erred, appellant focuses his youthfulness (20 years old at the time of the current offense) and his acceptance into a program

6

designed to address his drug use and gang involvement in the event he were granted probation. But, as the trial court noted, other circumstances weighed against dismissing the strike. The strike arose from a 2010 robbery conviction involving a 16-year-old victim whom appellant threatened with a knife. Appellant was granted probation in that case, yet failed to reform. Appellant's adult criminal record also included a 2011 misdemeanor domestic violence offense against the mother of his child. As a juvenile, he had misdemeanor adjudications for gang-related conduct.

Given his criminal record and history of gang involvement, as well as the violent nature of the current offense, appellant has not demonstrated an abuse of discretion. " '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more . . . prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling . . . .' " (*People v. Philpot* (2004) 122 Cal.App.4th 893, 905.) The trial court here considered the relevant factors; it simply reached a conclusion with which appellant does not agree. This is not an " 'extraordinary' " case in which we can say appellant falls outside the spirit of the Three Strikes law. (*People v. Finney* (2012) 204 Cal.App.4th 1034, 1040.)

C. *Presentence Conduct Credits*

Appellant was in county jail for 291 days before he was sentenced. He received credit for this time plus an additional 43 days of conduct credits, or 15 percent of the actual time served. Appellant argues he was entitled to additional conduct credits at an effective ratio of one-for-one, under the current version of section 4019, subdivision (f), which is applicable to crimes committed on or after October 1, 2011, and provides: "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody." We reject the claim.

Appellant's entitlement to presentence conduct credits is limited by section 2933.1, subdivision (c), which provides, "Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement

in . . . a county jail . . . following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)." Section 2933.1, subdivision (a) applies to "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 . . . ," and appellant's robbery conviction qualifies as a violent felony under section 667.5, subdivision (c)(9). Section 2933.1 operates as an exception to section 4019 when, as here, the defendant is currently convicted of a violent felony under section 667.5, subdivision (c). (*People v. Brewer* (2011) 192 Cal.App.4th 457, 462.)

Appellant seeks to avoid the effect of section 2933.1 by citing *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*), in which the Supreme Court considered the retroactivity of a now superseded version of section 4019 effective from January 25, 2010 until September 27, 2010, which temporarily increased the rate at which most prisoners in local custody could earn conduct credits. (Stats. 2009, 3d Ex. Sess., 2009–2010, ch. 28, § 50.) Construing this prior, temporary version of the statute, the court in *Brown* noted, "Prisoners who were required to register as sex offenders, had been committed for serious felonies, or had prior convictions for serious or violent felonies were not eligible for credits at the increased rate. (Former § 4019, subds. (b)(2), (c)(2).) The Legislature deleted these restrictions in 2010. [Citation.]" (*Brown*, at p. 319, fn. 5.)

Appellant takes the quoted portion of *Brown* out of context. The court in *Brown* was not referring to section 2933.1 or to offenders currently convicted of violent felonies. Rather, it was remarking on a different category of prisoners established by the interim version of section 4019.

When the Legislature increased the amount of presentence conduct credits under the version of section 4019 in place during the eight months from January 25, 2010 until September 27, 2010, it excluded from the new formula certain defendants—namely, registered sex offenders, those currently convicted of serious felonies, and those previously convicted of serious or violent felonies. (Former § 4019, subds. (b)(2), (c)(2), as amended by Stats. 2009, 3d Ex. Sess., 2009–2010, ch. 28, § 50.) Section 4019 was amended in September 2010 to restore the original formula for presentence conduct

credits, and in 2011 when the current version of the statute was enacted and credits were again increased.  (Stats. 2010, ch. 426, § 2, subsequently amended by Stats. 2011, ch. 15, § 482, Stats. 2011, ch. 39, § 53, and Stats. 2011, 1st Ex. Sess., 2011–2012, ch. 12, § 35; see *People v. Garcia* (2012) 209 Cal.App.4th 530 [providing comprehensive summary of § 4019 amendments].)  When section 4019 was amended effective September 28, 2010, to restore credits to the previous, less generous ratio, the Legislature deleted that portion of the statute that had limited conduct credits in cases where the defendant was required to register as a sex offender, was currently convicted of a serious felony, or was previously convicted of a serious or violent felony.  (Stats. 2010, ch. 426, § 2.)

The court in *Brown* was, therefore, simply recognizing that newer versions of section 4019 do not carve out an exception for defendants who fall into the categories mentioned.  (*Brown*, *supra*, 54 Cal.4th at p. 319, fn. 5.)  These categories—persons required to register as sex offenders, persons convicted of serious felonies, and persons previously convicted of serious or violent felonies—do not include defendants currently convicted of a violent felony.  Neither *Brown* nor any of the versions of section 4019 it considered nullified section 2933.1, subdivision (c), and its limitation on conduct credits for defendants currently convicted of a violent felony.  Appellant is not entitled to additional credits.

## III.  DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

SIMONS, J.