Filed 3/19/14  P. v. Rios CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>VICTOR ANTHONY RIOS,<br><br>　　　Defendant and Appellant. | B248098<br><br>(Los Angeles County<br>Super. Ct. No. KA100642) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

　　　Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Victoria B. Wilson, Deputy Attorney General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Defendant Victor Anthony Rios appeals from a judgment following a negotiated plea to possession of a controlled substance. Rios contends that the trial court erred by denying his motion to suppress methamphetamine recovered following a patdown search by police. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

At 10:17 p.m. on January 12, 2013 the El Monte Police Department received a report of loud music at an apartment complex. Officer Jesus Rojas and his partner, Officer Bryan Tromp, were dispatched to the complex. Pulling into a driveway, the officers saw Rios standing about five feet away from Nathaniel Gonzalez, who was holding a gun. The men appeared to be together. Gonzalez looked surprised when he saw the officers and threw the gun over a block wall as Rios stepped away from him. The officers heard the gun hit the ground and then a gunshot. They immediately placed Rios and Gonzalez in handcuffs. Officer Rojas subjected Rios to a "fairly quick" patdown search for weapons because he "was in fear that [Rios] might be associated with [Gonzalez] and might be in possession of a weapon . . . ," and had Rios sit on the pavement next to him. Officer Tromp placed Gonzalez in the backseat of the patrol car. Officers Rojas and Tromp, the only officers present, were intent on locating the gun and trying to control the scene until additional officers arrived. At the time, there were other individuals in the area of the driveway.

Officer Victor Ruiz arrived at the apartment complex at 10:25 p.m. to provide backup. Officer Ruiz took Officer Rojas' place beside Rios, who was still sitting on the pavement, so that Officer Rojas could interview a potential witness. Three to five minutes later, Rios began shifting his weight and moving around on his buttocks, leading Officer Ruiz to suspect that Rios might be concealing something.

2

Officer Ruiz asked Officer Tromp if Rios had been patted down for weapons. Officer Tromp replied Rios had been subjected to a "quick cursory search for weapons" because he and Officer Rojas had been focused on Gonzalez. At that point, Officer Ruiz was not confident Rios had been properly patted down. Officer Ruiz knew that the officers had seen Gonzalez with a gun, which they were in the process of recovering. Officer Ruiz also understood from the other officers that they ultimately might release Rios depending on the results of their investigation. Officer Ruiz wanted to make sure that if the officers released Rios, he was unarmed.

Officer Ruiz asked Rios to stand up so he could pat him down for weapons. Officer Ruiz testified at the suppression hearing that at that point he was searching for "[w]eapons or obvious contraband. When I say contraband, it could be anything that could be used as a weapon." When Officer Ruiz asked Rios to place his legs shoulder-width apart, Rios initially complied but then moved his legs back together three separate times. Officer Ruiz suspected Rios had placed an object in his rectum or groin area and was trying to keep it from dropping to the ground. When Officer Ruiz patted down Rios he felt a hard object about an inch-and-a-half long in the area of Rios' rectum or groin. Officer Ruiz stated, "I ran my hand up the leg [and] ran it up high into the groin, and that's when I felt a hard object . . . high up in the groin and/or rectum area, and at that point I knew . . . that there was something that was unusual there and I asked him what it was." Rios said it was a piece of glass he had picked up. Officer Ruiz explained at the hearing, "I didn't manipulate the object. All I can tell you is that I felt a hard object in a region that was uncommon on the human body to have a hard object there, which is what caught my attention."

After Officer Ruiz asked if he "could get it," and Rios consented, the officer tugged on the object over Rios' clothing in an attempt to remove it. When that proved unsuccessful, Officer Ruiz asked Rios if he had "keistered" the object or secreted it in his

rectum.[1]  Rios said, "No."  Rios then said that the object was loose in his pants.  Officer Ruiz "unbuckled [Rios'] pants and opened the waistband and looked down into the pants to see if it was loose like he said," but Officer Ruiz "did not see it."  Moments later the item came out of Rios' pant leg onto the ground and shattered.  Rios attempted to step on it, and Officer Ruiz removed him from the area.  Officer Tromp retrieved the object, which was a broken glass pipe.  Inside the pipe was a plastic bag containing methamphetamine.

Vivian Hernandez, a defense witness at the suppression hearing, testified that she lived at the apartment complex on the night Rios was detained, handcuffed, and searched.  She initially testified that the officers put on gloves, pulled down Rios' pants, and searched his buttocks.  On cross-examination, however, Hernandez indicated she did not have a clear view of the events and did not see the officers put their hands inside Rios' pants or into his buttocks.

At the conclusion of the hearing, counsel for Rios moved to suppress the methamphetamine and any statements by Rios, contending that the patdown search Officer Ruiz conducted was the fruit of an unduly prolonged detention.  In the alternative, counsel for Rios argued that Officer Ruiz subjected Rios to an impermissible patdown search for weapons without articulable facts indicating Rios might be armed.

In denying the motion, the trial court determined that the serious nature of the underlying criminal activity coupled with the discarded weapon and gunfire justified Rios' brief detention.  The court stated, "I think what's serious here is the underlying crime that was being investigated . . . .  [Rios was] standing within a few feet of a man who, upon see[ing] police, throws a gun over the fence and [the] gun goes off and expels a bullet.  I think the police were more than justified in detaining both people and conducting an investigation to make sure that—to find out who was involved with that weapons violation."  As for the patdown search of Rios, the court concluded it was

---

[1]    Officer Ruiz testified that in his experience suspects commonly try to "keister" or hide objects in the rectum or groin area.

warranted for officer safety where Rios was squirming on the ground and the initial patdown search may have not been sufficiently thorough to discover a weapon. The court explained, "So I think the officer that did the search, Ruiz, testified that the purpose of the search was he felt uncomfortable because [Rios] was sitting on the ground squirming around. They were investigating a gun possession discharge . . . . I think the second patdown search was justified because there are situations where an initial pat down search may not be thorough and may not reveal a weapon. . . . So I think the officer was justified for his safety reasons to conduct a patdown search, and then when he found the hard object and [Rios] said it was glass, there are cases . . . where objects that feel like weapons are upheld, one of them a large bottle, a flashlight. . . . So I think in this situation the officer was justified in conducting the search. When he felt the object he asked [Rios] what it was, [and] he said, glass. I think at that point it becomes more dangerous because we don't know what type of glass it was, and then retrieving the object was part and parcel of that."

## DISCUSSION

A.    *Standard of Review*

In reviewing the trial court's ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) The trial court has the authority to judge credibility, weigh evidence, and draw factual inferences. (*Ibid*.) In determining whether the search or seizure was reasonable under the facts found by the trial court, however, we exercise our independent judgment. (*Ibid*.; see *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.)[2]

---

[2]    Whether the court should exclude relevant evidence obtained by allegedly unlawful means is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (See Cal. Const., art. I, § 28, subd. (f)(2); *Robey v.*

B.    *Law Governing Detentions and Patdown Searches*

"'Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty.'" (*Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 319, quoting *In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

A detention occurs within the meaning of the Fourth Amendment when the officer, by means of physical force or show of authority, in some manner temporarily restrains the individual's liberty. (*Brendlin v. California* (2007) 551 U.S. 249, 254 [127 S.Ct. 2400, 168 L.Ed.2d 132]; *People v. Zamudio* (2008) 43 Cal.4th 327, 341; *People v. Bates* (2013) 222 Cal.App.4th 60, 65.) A police officer may detain an individual only if the officer has a reasonable, articulable suspicion the detainee has been, currently is, or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1, 21 [88 S.Ct. 1868, 20 L.Ed.2d 889]; see *People v. Hernandez* (2008) 45 Cal.4th 295, 299 [police officer must "'point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity'"]; *People v. Leath* (2013) 217 Cal.App.4th 344, 354 ["'"[i]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity'"'"].) Even when a detention is initially lawful, it can become illegally prolonged if it continues beyond the time necessary to resolve the purpose of the initial detention. (*United States v. Sharpe* (1985) 470 U.S. 675, 686 [105 S.Ct. 1568, 84 L.Ed.2d 605]; see *People v. Grant* (1992) 8 Cal.App.4th 1105, 1110 ["'what is begun as a lawful detention may

*Superior Court*, *supra*, 56 Cal.4th at p. 1223; *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)

become an unlawful search and seizure when the continued detention is no longer justified'"].)

When a police officer reasonably suspects a crime has been committed and the individual he has detained may be armed and dangerous, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry v. Ohio*, *supra*, 392 U.S. at p. 30.) "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (*Adams v. Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 32 L.Ed.2d 612].) To justify a patdown search for weapons, the officer need not have probable cause to arrest the individual nor "be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, *supra*, at p. 27; *People v. Mendoza* (2011) 52 Cal.4th 1056, 1081-1082.) As with an investigatory detention, the determination whether an officer had reasonable suspicion to conduct a patdown search for weapons is based on the totality of the circumstances. (*People v. Barnes* (2013) 216 Cal.App.4th 1508, 1514; *In re H.M.* (2008) 167 Cal.App.4th 136, 143-144.)


C.      *Rios' Detention Was Not Unduly Prolonged*

Rios does not challenge his initial detention but asserts his "detention was unduly prolonged . . . ." Rios argues that once the officers "were satisfied that neither he nor [Gonzalez] were otherwise armed, . . . they simply had no cause to detain [Rios] further, because plainly he was suspected of no crime." Rios also argues that "Officer Ruiz could cite no specific crime or warrant as the basis for the continued detention," and that the "reasonably prudent course once [Rios] was discovered to be unarmed would be to release him." Rios also asserts that "[a] weapon of which all but an inch appeared to be inside [his] rectum, not visible upon unbuckling his pants and looking into his clothing . . . , did not pose any threat to [the] officers."

7

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. [Citations.] A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." (*United States v. Sharpe*, *supra*, 470 U.S. at p. 686; *People v. Williams* (2007) 156 Cal.App.4th 949, 959.) Facts that the officers discover during the detention may justify prolonging the detention. (See *People v. Warren* (1984) 152 Cal.App.3d 991, 996-997.) "Similarly, handcuffing a suspect does not necessarily convert a detention into a de facto arrest." (*People v. Turner* (2013) 219 Cal.App.4th 151, 162.)

Here, two police officers encountered two male companions outside an apartment complex late at night and saw one of the men throw a handgun that fired a shot upon striking the ground. Rios does not dispute that under these circumstances the officers had reasonable suspicion to subject him to an investigatory detention and a patdown search for weapons. Instead, Rios contends once the officers initially failed to find a weapon in his possession they should have immediately released him, rather than continuing to detain him and then subject him to a second patdown search by Officer Ruiz. His contention assumes that the purpose of the investigatory detention was completed after the initial patdown search. This assumption, however, is false.

The evidence shows the detention of Rios following the patdown search was part of the efforts of Officers Rojas and Tromp to locate the gun and otherwise to secure the scene in a developing situation. The detention was reasonable not only to ensure the officers' safety and the safety of others who were in the area, but also to enable the officers to conduct an investigation. And nothing in the record suggests the officers were not pursuing their investigation in a diligent and reasonable manner while Rios was detained.

8

Rios' detention was extended because of the need to await the arrival of additional officers. Officer Ruiz responded within eight minutes after the report of loud music to police. His decision to perform a patdown search of Rios occurred within minutes of speaking to Officers Rojas and Tromp and taking Officer Rojas' place next to Rios. The officers were still in an uncertain situation, at nighttime with other people in the vicinity and with at least one discharged weapon at the scene. The officers reasonably detained Rios while they took some time to determine whether there were any other weapons or circumstances that might create a danger to themselves or the residents of the apartment complex. The contested detention was not unduly prolonged. (See *People v. Williams*, *supra*, 156 Cal.App.4th at p. 960 [detention of several hours while deputies searched for a "'marijuana grow'" was not unduly prolonged]; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1577 [extension of detention "for an additional 15 to 20 minutes because of the need to obtain a Spanish-speaking officer to communicate with defendant" was not unreasonable]; *People v. Valencia* (1993) 20 Cal.App.4th 906, 908, 920 [detention lasting longer than 15 minutes "was not unduly long" where "it continued apace as more indicators of illegal activity came about"]; *People v. Huerta* (1990) 218 Cal.App.3d 744, 750-751 ["the five to ten minutes it took to search the truck was time diligently spent in an attempt to confirm or dispel the officers' reasonable suspicions regarding defendant's association with the established criminal activity at the premises" and therefore was not "too long in duration to be justified as an investigative stop" under *Terry*]; *People v. Bowen* (1987) 195 Cal.App.3d 269, 274 ["25-minute detention" while handcuffed until officers brought the victim to the scene to identify the suspect "was not unreasonable and did not amount to an arrest"].)

D.      *The Patdown Search by Officer Ruiz Was Lawful*

Rios contends the patdown search by Officer Ruiz was unlawful because it was based on a hunch and improperly conducted after Officers Rojas and Tromp had found no

weapons in Rios' possession.[3]  In the circumstances facing the officers, however, it was reasonable to conduct a second patdown search of Rios.  The initial patdown of Rios was "quick" because the officers were focusing on Gonzalez.  Rios then exhibited suspicious behavior after the first patdown by squirming in apparent discomfort while seated.  After learning that the initial patdown search had been cursory, Officer Ruiz reasonably believed this behavior suggested that Rios had concealed a weapon in the area of his rectum or groin.  The second patdown search was reasonable and did not violate the Fourth Amendment.  (See *People v. Lopez* (2004) 119 Cal.App.4th 132, 134-135 [second patdown search for weapons was reasonable where officers responded to a call that two men in a park had a firearm, it was dark and the witness could not say which of the two suspects had the weapon, and the officers believed the defendant was still armed even after they found one handgun in the area]; *People v. Avila* (1997) 58 Cal.App.4th 1069, 1072-1073 [officer had reasonable belief his safety was in danger where the defendant acted suspiciously, walked around his car, dropped an envelope, and had a metal object within reach].)

To the extent Rios is arguing that the search was overly intrusive, it was not unreasonable for Officer Ruiz to pat the length of Rios' legs when searching for a concealed weapon.  (See *People v. Avila*, *supra*, 58 Cal.App.4th at p. 1075, fn. 4 ["[i]t is not unreasonable to pat the legs when searching for a concealed weapon"].)  Focusing on Rios' buttocks area, Officer Ruiz felt a hard object protruding from Rios' groin or rectum, which the officer did not manipulate or attempt to remove.  Instead, after Rios identified the object as a piece of glass—a potential weapon—Officer Ruiz asked Rios

---

**3**    In challenging the second patdown search, Rios attacks at length Officer Ruiz's credibility, which was "the exclusive province of the trial court hearing the suppression motion . . . ."  (*People v. Barnes*, *supra*, 216 Cal.App.4th at 1520; see *People v. Woods* (1999) 21 Cal.4th 668, 673 ["[a]s the finder of fact in a proceeding to suppress evidence (Pen. Code, § 1538.5), the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weight the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable"].)

for permission to remove it.  Rios is not claiming that his consent was involuntary (compare *People v. Tully*, *supra*, 54 Cal.4th at p. 983, fn. 10) or that Officer Ruiz exceeded the scope of his consent (compare *People v. Valencia* (2011) 201 Cal.App.4th 922, 928.)

> E.  *The Trial Court Properly Conducted the Pitchess Motion*

Pursuant to *People v. Mooc* (2001) 26 Cal.4th 1216, Rios asks us to review the transcript of the in camera hearing on his motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 and the documents the court reviewed after determining that Rios had demonstrated good cause to discover information in Officer Ruiz' personnel and administrative records.  (See Evid. Code, §§ 1043, 1045.)  The People do not object.

There is nothing in the record indicating that Rios obtained a certificate of probable cause.  "Under [Penal Code] section 1237.5, a defendant generally may not appeal from a judgment of conviction following a guilty or no contest plea, unless he files with the trial court a statement 'showing reasonable, constitutional, jurisdictional, or other grounds going to the legality of the proceedings' ([Pen. Code,] § 1237.5, subd. (a)), and the trial court executes and files 'a certificate of probable cause for such appeal with the clerk of the court' ([Pen. Code,] § 1237.5, subd. (b))."  (*People v. Mashburn* (2013) 222 Cal.App.4th 937, 941.)  An exception to this rule, however, "permits an appeal without a probable cause certificate if the appeal is based on '[t]he denial of a motion to suppress evidence under . . . [Penal Code] section 1538.5' or '[g]rounds that arose after entry of the plea and do not affect the plea's validity.'  [Citations.]"  (*Id.* at pp. 941-942.)  However, the "issuance of a certificate of probable cause pursuant to [Penal Code] section 1237.5 does not operate to expand the grounds upon which an appeal may be taken . . . .'  [Citation.]"  (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1364.)

"Issues concerning the defendant's guilt or innocence are not cognizable on appeal from a guilty plea," and the "same restrictions on appellate issues apply after a no contest plea . . . ."  (*People v. Voit*, *supra*, 200 Cal.App.4th at p. 1364.)  After a guilty or no contest plea, rulings on a *Pitchess* motion, like other discovery rulings, are generally not

11

subject to challenge on appeal. (*People v. Hunter* (2002) 100 Cal.App.4th 37, 42-43.) Nevertheless, where "the *Pitchess* motion [is] intertwined with litigating the legality of the search, the trial court's denial of that motion is cognizable on appeal." (*People v. Collins* (2004) 115 Cal.App.4th 137, 151.)

Rios' *Pitchess* motion asked for discovery of, among other things, complaints relating to "fabrication of reasonable suspicion and/or probable cause" and "illegal search/seizure." The trial court, noting that Rios' "theory is that he had been searched the first time, [and] nothing [was found] on him by the officers who originally arrived on the scene," found good cause for the production of complaints relating to "filing false police reports, fabrication of evidence or false arrests. I think those are generic enough to cover any areas of concern raised by counsel on the moving papers." We conclude that this is enough to justify review of the trial court's *Pitchess* motion ruling to the extent Rios directed his *Pitchess* claims to the legality of the patdown search and seizure. Therefore, we have reviewed the sealed record of the proceedings, which adequately describes the documents the court reviewed, and conclude that the trial court did not abuse its discretion in determining there was some discoverable information. (See *People v. Mooc*, *supra*, 26 Cal.4th at p. 1229.)

## DISPOSITION

The judgment is affirmed.

SEGAL, J.*

We concur:

WOODS, Acting P. J.

ZELON, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.