Filed 12/12/23  P. v. Keefer CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RICKIE LEE KEEFER, SR.,<br><br>     Defendant and Appellant. | A164934<br><br>(Contra Costa County<br>Super. Ct. No. 05-190832-6) |

Defendant Rickie Lee Keefer, Sr., appeals his conviction for first degree murder, asserting the trial court improperly admitted evidence obtained by the police in violation of his constitutional rights.  Defendant further contends the trial court erred in imposing a serious felony and "Three Strikes" law (Pen. Code,[1] § 1170.12, subd. (c)) sentencing enhancements.  We agree the court erred in imposing sentencing enhancements but otherwise affirm the judgment.[2]

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] On May 31, 2023, defendant filed an unopposed request for judicial notice of a website, carfigures.com, <https://carfigures.com/us-market-brand/ hyundai/santa-fe> [as of Dec. 12, 2023], which purports to set forth sales figures of Hyundai Santa Fe SUVs in the United States between 2005 and 2018.  While we grant the motion in part as to the existence of the website, we decline to grant the motion as to its factual content.  Defendant has failed

# I.

# BACKGROUND

## A. *Factual Background*

The victim, a homeless woman, was stabbed to death in the early morning.  Her body was found inside a wooden enclosure in a large pool of blood.  The enclosure, which was located in the dumpster area behind a shopping center, was regularly used by homeless individuals.

Surveillance video of the area shows the victim arrived shortly after midnight.  At approximately 5:30 a.m., a male driving a gold Hyundai Santa Fe SUV drove into the dumpster area.  The vehicle's headlights illuminated the enclosure in which the victim was found, and the vehicle remained for approximately three minutes while the driver exited the vehicle, looked inside the dumpster and took some items, and then returned to his vehicle.  Approximately 30 minutes later, footage depicted a white male walking away from the area of the dumpster and enclosure.  Only an audio recording captured the confrontation between the victim and her killer, which placed her murder around the time the male captured on surveillance video was in the vicinity of the dumpster area.  The footage also did not show anyone else entering or leaving the area during the time of the murder.  An autopsy indicated the likely cause of death was a stab wound to the victim's chest.

After reviewing the video recordings, the police began searching for a gold-colored Hyundai Santa Fe SUV.  No license plate information was available.  The day after the murder, police observed a similar vehicle parked in the Safeway parking lot, approximately 1,100 feet from the dumpster area.

---

to demonstrate the website constitutes a "source[] of reasonably indisputable accuracy."  (See Evid. Code, § 452, subd. (h).)

Defendant was found asleep in the driver's seat. The police knocked on his window and requested he exit the vehicle.

Outside the vehicle, Officer Pardella questioned defendant about the vehicle and his recent activities. Defendant confirmed the vehicle belonged to him, and he had been the sole driver of the vehicle over the past two days. He confirmed he recently had been "dumpster diving." Defendant also acknowledged having knives in his vehicle.

The police subsequently requested defendant go to the station for further questioning. Defendant initially agreed but raised concerns about leaving his vehicle and the nature of the questions. Defendant asked, "If you're arresting me, do I need a lawyer?" Officer Pardella responded by asking defendant if he was "in cuffs." Officer Pardella stated he did not handcuff defendant because he was "cooperating" and "volunteering." When defendant subsequently asked what would happen if he did not agree to go to the station, the police informed him they would arrest him for sleeping in his vehicle.

The police eventually transported defendant to the station in a marked police car. At the station, the police provided defendant with *Miranda*[3] warnings, and defendant admitted he had driven his vehicle to the dumpster at approximately 5:37 a.m.

Defendant's vehicle was towed to the station and eventually searched. During that search, police located a duffel bag containing clothing, masks, a BB gun, a "hooded, dark colored North Face sweatshirt" similar to the one worn in the surveillance footage, a pair of blue jeans with "dark staining on the pant leg," various knives and tools, including ones matching "the profile

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

of the weapon that was used" to kill the victim, and a cell phone belonging to defendant.

## B. *Procedural Background*

The Contra Costa County District Attorney filed an amended information charging defendant with murder (§ 187, subd. (a); count 1). The information further alleged personal use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)) and had suffered a prior conviction that qualified as a strike and a serious felony (§§ 667, subds. (a)(1), (d)–(e), 1170.12, subds. (b)–(c)).

Defendant filed a motion to suppress evidence of his statements to the police and the items found as a result of a search warrant. He alleged his statements were made during a custodial interrogation without proper *Miranda* warnings, and the subsequent search warrant was based on illegally obtained evidence.

The trial court rejected this motion. The court concluded (1) defendant's initial detention was lawful and the majority of the statements obtained from the defendant were thus lawful, (2) defendant's statements during his de facto arrest were not pursuant to interrogation and thus not in violation of *Miranda*, (3) the information relied upon in the search warrant was lawful and the results of the search were not the result of a Fourth Amendment violation, and (4) even if the search warrant was quashed, the evidence would have been inevitably discovered. The court explained the initial detention was lawful based on the similarity between the defendant's clothing, location, and vehicle and the suspect on video. The court noted that during the course of that lawful detention, additional information emerged that gave rise to a "probable cause to arrest"—i.e.,

4

statements that no one else had driven the vehicle in the past two days and defendant had knives in the car.

The court found the detention became a de facto arrest when police required defendant to go to the police station. However, defendant's subsequent statement that he was the individual on video driving the vehicle to the dumpster was made after being given *Miranda* warnings. And, the court noted, the search warrant was based on these lawful statements.

The jury found defendant guilty of first degree murder and found true the deadly weapon enhancement. The trial court subsequently found true the special allegations regarding defendant's prior conviction. The trial court sentenced defendant to a prison term of 25 years to life for murder, doubled for the prior strike, one year for the deadly weapon enhancement, and five years for the prior serious felony conviction. Defendant timely appealed.

## II.

## DISCUSSION

### A. *Standard of Review*

" 'On appeal from a denial of a motion to suppress evidence on Fourth Amendment grounds[,] we review the historical facts as determined by the trial court under the familiar substantial evidence standard of review. Once the historical facts underlying the motion have been determined, we review those facts and apply the de novo standard of review in determining their consequences. Although we give deference to the trial court's factual determinations, we independently decide the legal effect of such determinations.' " (*People v. Bowen* (2020) 52 Cal.App.5th 130, 138.)

### B. *Probable Cause for Arrest*

On appeal, defendant does not contest his initial detention by the police or the legality of his statements during that detention (i.e., his sole

possession of the vehicle over the past two days and the presence of knives in his vehicle). Nor do the parties dispute that the initial detention evolved into a de facto arrest. Rather, the parties dispute whether the police had probable cause to arrest defendant for murder. Defendant contends he should not have been arrested and, as a result, the trial court was required to suppress evidence obtained after his arrest—i.e., his statement that he was the individual depicted in the video of the vehicle by the dumpster.

As explained in *People v. Celis* (2004) 33 Cal.4th 667, 673, "When the seizure of a person amounts to an arrest, it must be supported by an arrest warrant or by probable cause. [Citation.] Probable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime. [Citation.] '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts. . . .' [Citation.] It is incapable of precise definition. [Citation.] ' "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt," ' and that belief must be 'particularized with respect to the person to be . . . seized.' "

Here, the police reasonably believed the murderer was the White male captured on video by the enclosure at the time of the victim's death. That suspect appeared to match the individual who stopped by the adjacent dumpster in a Hyundai Santa Fe SUV and removed items from that dumpster approximately 30 minutes earlier. Based upon the individual's conduct, police believed the suspect was likely transient. The police subsequently located defendant in a Safeway parking lot, in an area known to be frequented by transient individuals. That parking lot was just over 1,000 feet from the dumpster and the enclosure where the murder occurred. Defendant's vehicle appeared to match the vehicle captured on video by the

6

dumpster. Defendant also appeared to match the suspect on video. Defendant confirmed he had sole possession of his car over the past two days. And defendant confirmed he had knives in his vehicle, and police were aware the victim was killed by a knife wound.

Courts have found similar evidence to constitute probable cause to arrest. For example, in *People v. Bowen* (1987) 195 Cal.App.3d 269, the court found probable cause to arrest when the defendant "was wearing a jacket similar to the one worn by the robber," "otherwise matched the description of one of the robbers given by the third citizen," was "in the company of a person who was identified by the victim as one of the robbers and this person was holding a purse," and the defendant "was stopped in the vicinity of the location where the crime was committed shortly after the crime." (*Id.* at pp. 274–275.) Similarly, in *People v. Soun* (1995) 34 Cal.App.4th 1499, the court concluded the arrest was supported by probable cause because the vehicle, appearance of assailants, and number of assailants matched descriptions provided by witnesses. (*Id.* at p. 1526.) The court further noted one of the assailants was wearing a baseball cap similar to one described by a witness. (*Id.* at pp. 1524, 1526.)

While defendant separately attacks each piece of evidence supporting his arrest (e.g., the "large number of Hyundai Santa Fe SUVs on the road," the indistinctive nature of a dark hooded sweatshirt, and that "millions of people carry knives in their cars"), defendant fails to recognize the impact of this evidence in combination. While possession of a similarly colored Hyundai Santa Fe SUV would not support an arrest, the arrest also was based on defendant's similar appearance to the individual captured on camera, the police's belief that the suspect, like defendant, was transient, defendant's location in proximity to the murder, and his possession of knives.

7

Likewise, defendant's reliance on *In re Dung T.* (1984) 160 Cal.App.3d 697 is misplaced. In *Dung T.*, six individuals were involved in a robbery but eight people were present in the vehicle stopped by police. (*Id.* at p. 713.) Because police "had no detailed descriptions of the robbers other than their ages and nationalities," they had no basis for identifying which six of the eight individuals were involved in the robbery. (*Ibid.*) Here, no such confusion existed. Defendant was the only individual in the vehicle, and he confirmed he had sole possession of the vehicle during the time of the murder.

Based on the foregoing, we conclude probable cause supported defendant's arrest.[4] The statements subsequently made by defendant after he had received *Miranda* warnings were thus not the product of any illegality. Likewise, the search warrant, which was based on defendant's statements during his custodial interrogation, and the items found during execution of the search warrant were not the product of any illegality.[5]

## C. *Three Strikes Law Sentencing Enhancement*

Defendant asserts certain sentencing enhancements based on his Illinois conviction for robbery were improper because that conviction did not qualify as a strike under California law.

---

[4] Defendant relies on *Dunaway v. New York* (1979) 442 U.S. 200 to argue that subsequent incriminating statements made after *Miranda* warnings cannot cure an earlier improper arrest. But we do not rely on any subsequent statements by defendant in reaching our conclusion.

[5] Because probable cause supported defendant's arrest, we need not address defendant's alternative arguments that (1) an arrest for sleeping in his vehicle would not have supported his subsequent interrogation about the murder, and (2) the vehicle's expired registration would not have inevitably led to the discovery of evidence.

### 1. Relevant Factual Background

Defendant pled guilty to and was convicted of robbery in Illinois. During the hearing on defendant's negotiated plea, the prosecution set forth the following factual basis for the robbery charge: "[T]he People of the State of Illinois would call Linda Licht, who would testify . . . that at the close of business . . . she was coming out of the front door of the business, walking toward her car, two individuals with ski masks on come up towards her [*sic*], demanded her money and threatened to do bodily harm to her, at which time she dropped her purse and along with her car keys, one of the individuals grabbed the purse and ran away with it. She would further testify that the purse contained $60.00 . . . and other personal effects that belonged to her." The court then asked defendant if this recitation was "substantially correct," to which defendant responded, "Yes."

The prosecution filed a motion in the current matter for the court to consider this robbery conviction as a strike and serious felony. Following defendant's conviction for murder, the trial court found "true the alleged prior conviction out of the state of Illinois as a prison prior and as a serious felony and strike prior under [section] 1170.12."

### 2. Analysis

"The People must prove every element of a sentence enhancement beyond a reasonable doubt. [Citation.] This includes the duty to prove the prior conviction is a serious or violent felony. [Citation.] Where the prior conviction is based on a guilty plea, the prosecution must prove the defendant admitted all elements of the California offense. [Citation.] If the mere fact of a conviction does not prove the offense was a qualifying felony, admissible evidence from the record of conviction, including certified documents from the

9

prior proceeding, may be examined to resolve the issue." (*People v. Hiller* (2023) 91 Cal.App.5th 335, 345 (*Hiller*).)

However, courts are limited by the protections of the Sixth Amendment. (*Hiller*, *supra*, 91 Cal.App.5th at p. 345.) In *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), the California Supreme Court addressed whether a trial court acted properly in reviewing the transcript of the preliminary hearing in an assault case to determine that the defendant used a deadly weapon in committing the assault. (*Id.* at p. 123.) The court reconsidered its prior opinion in *People v. McGee* (2006) 38 Cal.4th 682, which allowed courts to review a criminal record to determine whether the conviction was based on conduct that would constitute a serious felony under California law. The court disproved *McGee* "to the extent the case suggested it is constitutionally permissible for the sentencing court to find a disputed fact about the conduct underlying the earlier conviction that was not established by virtue of the conviction itself." (*Hiller*, at p. 346, citing *Gallardo*, at p. 125.) Accordingly, "when an enhancement relies on a finding regarding the defendant's conduct, but the jury did not make that finding and the defendant did not admit that fact, the defendant's Sixth Amendment rights are violated." (*Hiller*, at pp. 347–348.)

As an initial matter, we note the elements of robbery differ between California and Illinois. As explained by the California Supreme Court in *In re Milton* (2022) 13 Cal.5th 893, 900, "The California offense of robbery (§ 211), which is a serious felony (§ 1192.7, subd. (c)(19)), is a specific intent crime that requires ' "the intent to permanently deprive the person of the property." ' [Citation.] Illinois robberies are general intent crimes, and the definitions of robbery and armed robbery in Illinois do not include this specific intent element."

10

The Attorney General argues broadly that courts may consider whether the underlying conduct of a crime would have constituted a qualifying offense. We disagree. "The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) As a practical matter, however, the parties only argue regarding whether defendant's admissions at the hearing on his negotiated plea demonstrate that his robbery conviction qualifies as a strike. These admissions may properly be considered and can support an enhancement. (*Ibid.*)

Here, defendant admitted the factual basis for the robbery—i.e., that he demanded the victim's money, threatened to do bodily harm to her, and took her purse—was "substantially correct." While these allegations strongly suggest defendant's intent to keep the property, the allegations do not conclusively establish this fact. Defendant neither admitted such an intent, nor did a jury find it beyond a reasonable doubt. On this point, we agree with our colleagues in Division Three "that under *Gallardo*, the sentencing court may not infer such intent in order to impose a sentencing enhancement, no matter how strongly the facts would support such an inference." (*Hiller*, *supra*, 91 Cal.App.5th at p. 350; see also *Gallardo*, *supra*, 4 Cal.5th at p. 136 [sentencing courts "may not determine the 'nature or basis' " of a prior conviction through their own "conclusions about what facts or conduct 'realistically' supported the conviction"].) We shall remand the matter for a new hearing on the prior convictions and resentencing, at which the People may present any additional evidence of any admissions made by defendant when he entered his guilty plea.

11

## III.

## DISPOSITION

The true findings on the strike and section 667, subdivision (a) enhancements are reversed.  The sentence is vacated, and the case is remanded for resentencing.  In all other respects, the judgment is affirmed.

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


BANKE, J.


A164934
*People v. Keefer*